**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
(EASTERN DIVISION)**

| | | | |
|---|---|---|---|
| MEDALLION BANK, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | Case No. | 18-cv-05849 |
| | ) | | |
| LINCOLNSHIRE SERVICE I, CORP., an Illinois | ) | | |
| corporation, LINCOLNSHIRE SERVICE II, | ) | | |
| CORP., an Illinois corporation, LINCOLNSHIRE | ) | | |
| SERVICE CORP., an Illinois corporation, IL 1, | ) | | |
| CORP., an Illinois corporation, IL 2, CORP., an | ) | | |
| Illinois corporation, and LAURENTIU IONESCU, | ) | | |
| an individual, | ) | | |
| | ) | | |
| Defendants. | ) | | |

**COMPLAINT**

NOW COMES the Plaintiff, MEDALLION BANK, by and through its attorneys, Riemer

& Braunstein LLP, and for its Complaint, states as follows:

**Introduction**

1.      Each of the five borrowers identified below own and operate taxis in and around

Chicago, Illinois.  Plaintiff Medallion Bank financed the various loan arrangements described

below, but the respective borrowers have failed, refused, and neglected to pay amounts owing

upon the maturity of each of the loan arrangements.  Laurentiu Ionescu guaranteed each of the

loan arrangements, but has also failed, refused, and neglected to pay amounts owed under the

respective guarantees.  This is a suit to enforce the defaulted loan arrangements.

**Parties, Jurisdiction and Venue**

2.      The Plaintiff, Medallion Bank (hereinafter, "Lender"), is a Utah bank and has its

principal place of business located at 1100 East 6600 South, Salt Lake City, Utah, 84121.

3.     The defendant, Lincolnshire Service I, Corp. ("Lincolnshire Service I"), is an Illinois corporation with a usual place of business at 3351 W. Addison Street, Chicago, Illinois 60618, and is named as a defendant by virtue of being a borrower under one or more of the notes identified below.  Lincolnshire Service I owns and operates taxis in and around Chicago, Illinois, pursuant to medallions issued by the City of Chicago.

4.     The defendant, Lincolnshire Service II, Corp. ("Lincolnshire Service II"), is an Illinois corporation with a usual place of business at 3351 W. Addison Street, Chicago, Illinois 60618, and is named as a defendant by virtue of being a borrower under one or more of the notes identified below.  Lincolnshire Service II owns and operates taxis in and around Chicago, Illinois, pursuant to medallions issued by the City of Chicago.

5.     The defendant, Lincolnshire Service Corp. ("Lincolnshire Service"), is an Illinois corporation with a usual place of business at 3351 W. Addison Street, Chicago, Illinois 60618, and is named as a defendant by virtue of being the borrower under one or more of the notes identified below.  Lincolnshire Service owns and operates taxis in and around Chicago, Illinois, pursuant to medallions issued by the City of Chicago.

6.     The defendant, IL 1, Corp., is an Illinois corporation with a usual place of business at 3351 W. Addison Street, Chicago, Illinois 60618, and is named as a defendant by virtue of being the borrower under one or more of the notes identified below.  IL 1, Corp. owns and operates taxis in and around Chicago, Illinois, pursuant to medallions issued by the City of Chicago.

7.     The defendant, IL 2, Corp., in an Illinois corporation with a usual place of business at 3351 W. Addison Street, Chicago, Illinois 60618, and is named as a defendant by virtue of being the borrower under one or more of the notes identified below.  IL 2, Corp. owns

2

and operates taxis in and around Chicago, Illinois, pursuant to medallions issued by the City of Chicago.

8.      The defendant, Laurentiu Ionescu ("Guarantor"), is an individual whose last known address is 2175 Churchill Lane, Highland Park, Illinois 60035, and is named as a defendant by virtue of being the guarantor of all of the notes identified below.

9.      This Court has jurisdiction over this dispute under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 exclusive of interest and costs and the plaintiff and defendants are citizens of different states.

10.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (b)(2) because all of the defendants conduct their taxi businesses primarily in this district.

**Count I – Breach of $1.4M Note**
***Against Lincolnshire Service I, Corp.***

11.     Lender re-alleges and incorporates Paragraphs 1 through 10 as through fully set forth herein.

12.     On or around August 28, 2013, Lincolnshire Service I executed and delivered to Lender a Promissory Note in the principal amount of $1,400,000.00 (as modified and in effect, the "$1.4M Note").  A true and correct copy of the $1.4M Note is attached hereto as "**Exhibit 1**" and is incorporated herein by reference.

13.     The $1.4M Note was amended by that certain Forbearance and Modification Agreement dated as of November 17, 2016 (the "Modification Agreement") by and between Lender and Lincolnshire Service I, among others.  A true and correct copy of the Modification Agreement is attached hereto as "**Exhibit 2**" and is incorporated herein by reference.

14. Lincolnshire Service I has defaulted under the terms of the $1.4M Note, including, without limitation, Lincolnshire Service I's failure to pay all amounts owing upon the maturity date.

15. On July 6, 2018, Lender made demand upon Lincolnshire Service I for repayment in full of all amounts due and payable by Lincolnshire Service I under the $1.4M Note, but Lincolnshire Service I has failed to make payment as required by the $1.4M Note. A true and correct copy of the demand notice is attached hereto as "**Exhibit 3**" and is incorporated herein by reference.

16. As of July 16, 2018, the amounts due under the $1.4M Note are as follows:

| i. | Principal: | $1,168,832.72 |
|------|------------|---------------|
| ii. | Interest: | $11,931.81 |
| iii. | Late Charges: | $2,187.92 |
| iv. | Fees Balance: | $600.00 |
| v. | Deferred Interest: | $20,431.96 |
| **vi.** | **Balance:** | **$1,203,984.41** |

Interest continues to accrue after July 16, 2018 at the *per diem* rate of $113.64.

17. Pursuant to the terms of the $1.4M Note, Lincolnshire Service I agreed to pay all costs of collection, including reasonable attorneys' fees and disbursements, in the case of a payment default under the $1.4M Note.

18. Under the terms of the $1.4M Note, Lincolnshire Service I is indebted to Lender for all amounts now due and owing, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

4

2354841.1

(1)     Enter judgment in its favor and against Lincolnshire Service I, Corp. in the amount of $1,203,984.41, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count II – Breach of Guaranty of $1.4M Note
### *Against Laurentiu Ionescu*

19.     Lender re-alleges and incorporates Paragraphs 1 through 18 as through fully set forth herein.

20.     On or around August 28, 2013, Guarantor executed that certain Guaranty (the "$1.4M Note Guaranty") whereby Guarantor, as primary obligor and not merely as a surety, irrevocably and unconditionally guaranteed to Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of Lincolnshire Service I to Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by Lender in enforcing such liabilities.  A true and correct copy of the $1.4M Note Guaranty is attached hereto as "**Exhibit 4**" and is incorporated herein by reference.

21.     On July 6, 2018, Lender made demand upon Guarantor for payment in full of all amounts due and payable under the $1.4M Note Guaranty, but Guarantor has failed to make payment as required by the $1.4M Note Guaranty.  A true and correct copy of the demand notice is attached hereto as "**Exhibit 5**" and is incorporated herein by reference.

22.     Under the terms of the $1.4M Note Guaranty, Guarantor is indebted to Lender for all amounts now due and owing from Lincolnshire Service I, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Laurentiu Ionescu in the amount of $1,203,984.41, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count III – Breach of $1.575M Note
#### Against Lincolnshire Service II, Corp.

23.     Lender re-alleges and incorporates Paragraphs 1 through 10 as through fully set forth herein.

24.     On or around August 28, 2013, Lincolnshire Service II executed and delivered to Lender a Promissory Note in the principal amount of $1,575,000.00 (as modified and in effect, the "$1.575M Note").  A true and correct copy of the $1.575M Note is attached hereto as "**Exhibit 6**" and is incorporated herein by reference.

25.     The $1.575M Note was amended by that certain Modification Agreement by and between Lender and Lincolnshire Service II, among others, which Modification Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

26.     Lincolnshire Service II has defaulted under the terms of the $1.575M Note, including, without limitation, Lincolnshire Service II's failure to pay all amounts owing upon the maturity date.

27.     On July 6, 2018, Lender made demand upon Lincolnshire Service II for repayment in full of all amounts due and payable by Lincolnshire Service II under the $1.575M Note, but Lincolnshire Service II has failed to make payment as required by the $1.575M Note. A true and correct copy of the demand notice is attached hereto as "**Exhibit 7**" and is incorporated herein by reference.

28.     As of July 16, 2018, the amounts due under the $1.575M Note are as follows:

| i.   | Principal:     | $1,314,933.17 |
|------|----------------|---------------|
| ii.  | Interest:      | $13,423.24    |
| iii. | Late Charges:  | $2,461.40     |
| iv.  | Fees Balance:  | $600.00       |

6

| v. | Deferred Interest: | $22,985.92 |
|---|---|---|
| **vi.** | **Balance:** | **$1,354,403.73** |

Interest continues to accrue after July 16, 2018 at the *per diem* rate of $127.84.

29.     Pursuant to the terms of the $1.575M Note, Lincolnshire Service II agreed to pay all costs of collection, including reasonable attorneys' fees and disbursements, in the case of a payment default under the $1.575M Note.

30.     Under the terms of the $1.575M Note, Lincolnshire Service II is indebted to Lender for all amounts now due and owing, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Lincolnshire Service II, Corp. in the amount of $1,354,403.73, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count IV – Breach of Guaranty of $1.575M Note
*Against Laurentiu Ionescu*

31.     Lender re-alleges and incorporates Paragraphs 1 through 10 and 24 through 30 as through fully set forth herein.

32.     On or around August 28, 2013, Guarantor executed that certain Guaranty (the "$1.575M Note Guaranty") whereby Guarantor, as primary obligor and not merely as a surety, irrevocably and unconditionally guaranteed to Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of Lincolnshire Service II to Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by Lender in enforcing such liabilities.  A true and correct copy of the $1.575M Note Guaranty is attached hereto as "**Exhibit 8**" and is incorporated herein by reference.

7

33.     On July 6, 2018, Lender made demand upon Guarantor for payment in full of all amounts due and payable under the $1.575M Note Guaranty, but Guarantor has failed to make payment as required by the $1.575M Note Guaranty. A true and correct copy of the demand notice is attached hereto as "**Exhibit 9**" and is incorporated herein by reference.

34.     Under the terms of the $1.575M Note Guaranty, Guarantor is indebted to Lender for all amounts now due and owing from Lincolnshire Service II, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Laurentiu Ionescu in the amount of $1,354,403.73, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count V – Breach of $2.59M Note
### *Against Lincolnshire Service Corp. and Lincolnshire Service II, Corp.*

35.     Lender re-alleges and incorporates Paragraphs 1 through 10 as through fully set forth herein.

36.     On or around March 19, 2014, Lincolnshire Service and Lincolnshire Service II executed and delivered to Lender a Promissory Note in the principal amount of $2,590,000.00 (as modified and in effect, the "$2.59M Note"). A true and correct copy of the $2.59M Note is attached hereto as "**Exhibit 10**" and is incorporated herein by reference.

37.     The $2.59M Note was amended by that certain Modification Agreement by and between Lender and Lincolnshire Service and Lincolnshire Service II, among others, which Modification Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

38. Lincolnshire Service and Lincolnshire Service II have defaulted under the terms of the $2.59M Note, including, without limitation, their failure to pay all amounts owing upon the maturity date.

39. On July 6, 2018, Lender made demand upon Lincolnshire Service and Lincolnshire Service II for repayment in full of all amounts due and payable by under the $2.59M Note, but Lincolnshire Service and Lincolnshire Service II have failed to make payment as required by the $2.59M Note. A true and correct copy of the demand notice is attached hereto as "**Exhibit 11**" and is incorporated herein by reference.

40. As of July 16, 2018, the amounts due under the $2.59M Note are as follows:

| | | |
|---|---|---|
| i. | Principal: | $2,260,277.21 |
| ii. | Interest: | $48,564.53 |
| iii. | Late Charges: | $7,982.95 |
| iv. | Fees Balance: | $600.00 |
| v. | Deferred Interest: | $39,196.16 |
| **vi.** | **Balance:** | **$2,356,620.85** |

Interest continues to accrue after July 16, 2018 at the *per diem* rate of $219.75.

41. Pursuant to the terms of the $2.59M Note, Lincolnshire Service and Lincolnshire Service II agreed to pay all costs of collection, including reasonable attorneys' fees and disbursements, in the case of a payment default under the $2.59M Note.

42. Under the terms of the $2.59M Note, Lincolnshire Service and Lincolnshire Service II are indebted to Lender for all amounts now due and owing, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

9

2354841.1

(1)     Enter judgment in its favor and against Lincolnshire Service Corp. and Lincolnshire Service II, Corp., jointly and severally, in the amount of $2,356,620.85, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count VI – Breach of Guaranty of $2.59M Note
#### *Against Laurentiu Ionescu*

43.     Lender re-alleges and incorporates Paragraphs 1 through 10 and 36 through 42 as through fully set forth herein.

44.     On or around March 19, 2014, Guarantor executed that certain Guaranty (the "$2.59M Note Guaranty") whereby Guarantor, as primary obligor and not merely as a surety, irrevocably and unconditionally guaranteed to Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of Lincolnshire Service and Lincolnshire Service II to Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by Lender in enforcing such liabilities.  A true and correct copy of the $2.59M Note Guaranty is attached hereto as "**Exhibit 12**" and is incorporated herein by reference.

45.     On July 6, 2018, Lender made demand upon Guarantor for payment in full of all amounts due and payable under the $2.59M Note Guaranty, but Guarantor has failed to make payment as required by the $2.59M Note Guaranty.  A true and correct copy of the demand notice is attached hereto as "**Exhibit 13**" and is incorporated herein by reference.

46.     Under the terms of the $2.59M Note Guaranty, Guarantor is indebted to Lender for all amounts now due and owing from Lincolnshire Service and Lincolnshire Service II, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Laurentiu Ionescu in the amount of $2,356,620.85, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count VII – Breach of $1.168M Note
### *Against IL 1, Corp. and IL 2, Corp.*

47.     Lender re-alleges and incorporates Paragraphs 1 through 10 as through fully set forth herein.

48.     On or around March 19, 2014, IL 1, Corp. and IL 2, Corp. executed and delivered to Lender a Promissory Note in the principal amount of $1,168,200.00 (as modified and in effect, the "$1.168M Note").   A true and correct copy of the $1.168M Note is attached hereto as "**Exhibit 13**" and is incorporated herein by reference.

49.     The $1.168M Note was amended by that certain Modification Agreement by and between Lender and IL 1, Corp. and IL 2, Corp., among others, which Modification Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

50.     IL 1, Corp. and IL 2, Corp. have defaulted under the terms of the $1.168M Note, including, without limitation, IL 1, Corp. and IL 2, Corp.'s failure to pay all amounts owing upon the maturity date.

51.     On July 6, 2018, Lender made demand upon IL 1, Corp. and IL 2, Corp. for repayment in full of all amounts due and payable by IL 1, Corp. and IL 2, Corp. under the $1.168M Note, but IL 1, Corp. and IL 2, Corp. have failed to make payment as required by the $1.168M Note.  A true and correct copy of the demand notice is attached hereto as "**Exhibit 14**" and is incorporated herein by reference.

52.     As of July 16, 2018, the amounts due under the $1.168M Note are as follows:

| | | |
|---|---|---|
| i. | Principal: | $1,015,670.34 |
| ii. | Interest: | $19,946.60 |
| iii. | Late Charges: | $3,337.00 |
| iv. | Fees Balance: | $375.00 |
| v. | Deferred Interest | 17,657.41 |
| **vi.** | **Balance:** | **$1,056,986.35** |

Interest continues to accrue after July 16, 2018 at the *per diem* rate of $98.75.

53.     Pursuant to the terms of the $1.168M Note, IL 1, Corp. and IL 2, Corp. agreed to pay all costs of collection, including reasonable attorneys' fees and disbursements, in the case of a payment default under the $1.168M Note.

54.     Under the terms of the $1.168M Note, IL 1, Corp. and IL 2, Corp. are indebted to Lender for all amounts now due and owing, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against IL 1, Corp. and IL 2, Corp., jointly and severally, in the amount of $1,056,986.35, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count VIII – Breach of Guaranty of $1.168M Note
### *Against Laurentiu Ionescu*

55.     Lender re-alleges and incorporates Paragraphs 1 through 10 and 48 through 54 as through fully set forth herein.

56.     On or around March 19, 2014, Guarantor executed that certain Guaranty (the "$1.168M Note Guaranty") whereby Guarantor, as primary obligor and not merely as a surety, irrevocably and unconditionally guaranteed to Lender payment when due, whether by

12

acceleration or otherwise, of any and all liabilities of IL 1, Corp. and IL 2, Corp. to Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by Lender in enforcing such liabilities. A true and correct copy of the $1.168M Note Guaranty is attached hereto as "**Exhibit 15**" and is incorporated herein by reference.

57.     On July 6, 2018, Lender made demand upon Guarantor for payment in full of all amounts due and payable under the $1.168M Note Guaranty, but Guarantor has failed to make payment as required by the $1.168M Note Guaranty. A true and correct copy of the demand notice is attached hereto as "**Exhibit 16**" and is incorporated herein by reference.

58.     Under the terms of the $1.168M Note Guaranty, Guarantor is indebted to Lender for all amounts now due and owing from IL 1, Corp. and IL 2, Corp., together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Laurentiu Ionescu in the amount of $1,056,986.35, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

## Count IX – Breach of $200K Note
### *Against Lincolnshire Service Corp.*

59.     Lender re-alleges and incorporates Paragraphs 1 through 10 as through fully set forth herein.

60.     On or around July 9, 2014, Lincolnshire Service executed and delivered to Lender a Promissory Note in the principal amount of $200,000.00 (as modified and in effect, the "$200K Note"). A true and correct copy of the $200K Note is attached hereto as "**Exhibit 17**" and is incorporated herein by reference.

13

61. The $200K Note was amended by that certain Modification Agreement by and between Lender and Lincolnshire Service, among others, which Modification Agreement is attached hereto as Exhibit 2 and is incorporated herein by reference.

62. Lincolnshire Service has defaulted under the terms of the $200K Note, including, without limitation, Lincolnshire Service's failure to pay all amounts owing upon the maturity date.

63. On July 6, 2018, Lender made demand upon Lincolnshire Service for repayment in full of all amounts due and payable by Lincolnshire Service under the $200K Note, but Lincolnshire Service has failed to make payment as required by the $200K Note. A true and correct copy of the demand notice is attached hereto as "**Exhibit 18**" and is incorporated herein by reference.

64. As of July 16, 2018, the amounts due under the $200K Note are as follows:

| | | |
|---|---|---|
| i. | Principal: | $164,376.81 |
| ii. | Interest: | $1,965.64 |
| iii. | Deferred Interest: | $2,871.01 |
| iv. | Fees Balance: | $550.00 |
| **v.** | **Balance:** | **$169,763.46** |

Interest continues to accrue after July 16, 2018 at the *per diem* rate of $15.98.

65. Pursuant to the terms of the $200K Note, Lincolnshire Service agreed to pay all costs of collection, including reasonable attorneys' fees and disbursements, in the case of a payment default under the $200K Note.

66. Under the terms of the $200K Note, Lincolnshire Service is indebted to Lender for all amounts now due and owing, together with further accruing interest, costs and attorneys' fees.

14

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Lincolnshire Service Corp. in the amount of $169,763.46, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

### Count X – Breach of Guaranty of $200K Note
### *Against Laurentiu Ionescu*

67.     Lender re-alleges and incorporates Paragraphs 1 through 10 and 60 through 66 as through fully set forth herein.

68.     On or around July 9, 2014, Guarantor executed that certain Guaranty (the "$200K Note Guaranty") whereby Guarantor, as primary obligor and not merely as a surety, irrevocably and unconditionally guaranteed to Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of Lincolnshire Service to Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by Lender in enforcing such liabilities.  A true and correct copy of the $200K Note Guaranty is attached hereto as "**Exhibit 19**" and is incorporated herein by reference.

69.     On July 6, 2018, Lender made demand upon Guarantor for payment in full of all amounts due and payable under the $200K Note Guaranty, but Guarantor has failed to make payment as required by the $200K Note Guaranty.  A true and correct copy of the demand notice is attached hereto as "**Exhibit 20**" and is incorporated herein by reference.

70.     Under the terms of the $200K Note Guaranty, Guarantor is indebted to Lender for all amounts now due and owing from Lincolnshire Service, together with further accruing interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff, Medallion Bank, requests the Court:

(1)     Enter judgment in its favor and against Laurentiu Ionescu in the amount of

$169,763.46, together with further accruing interest, costs and attorneys' fees; and

(2)     Grant such other and further relief as the Court may deem just and equitable.

RESPECTFULLY SUBMITTED

MEDALLION BANK,


By its Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated:  August 27, 2018

_____/s/ Phillip J. Block_____
Phillip J. Block
pblock@riemerlaw.com
Riemer & Braunstein LLP
71 South Wacker Drive, Suite 3515
Chicago, Illinois 60606
(312) 780-1173
Firm No. 44250

16

# EXHIBIT 1

**Medallion Bank**

**PROMISSORY NOTE**

Medallion # 683TX, 1048TX, 1185TX, 1360TX, 1552TX, 2792TX, 2918TX, 3535TX

$1,400,000.00                                                                                        August 28, 2013

FOR VALUE RECEIVED, the undersigned, Lincolnshire Service I, Corp. (the "Borrower"), located at 3351 W. Addison Street, Chicago, IL 60618, promises to pay to the order of Medallion Bank (the "Lender"), in lawful money of the United States, at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **One Million Four Hundred Thousand Dollars ($1,400,000.00)**, with interest thereon to be computed and paid from the date of this Note until **August 28, 2018** (the "Maturity Date"), at the rate of **4 and 75/100 percent (4.75%)** per annum except as set forth below, in constant monthly installments of **$10,939.72**, commencing on **September 28, 2013**, and on the **28th** day of each month thereafter until the Maturity Date, at which time all unpaid principal balance and accrued interest shall be due and payable. All payments, including but not limited to, monthly installment payments, shall be applied first to any outstanding charges, fees, costs or expenses incurred, then to accrued interest, and then to the outstanding principal.

If the execution of this note and the disbursement of funds there from do not occur simultaneously, then Lender may elect, in its sole untrammeled discretion, to extend: (1) the initial date upon which interest begins to accrue, or (2) the date upon which the loan ultimately matures, or both. But such extension will in no event exceed the number of days which elapsed between execution and initial disbursement of the loan proceeds or any portion thereof.

Notwithstanding the foregoing, if (i) there shall occur an "Event of Default" under the Security Agreement described below (as such term is defined in the Security Agreement) or (ii) the Maturity Date shall occur, or (iii) any sum shall not be paid when it is due hereunder, then from and after any such occurrence or nonpayment the undersigned shall pay interest to the Lender, on demand, on the entire principal amount then outstanding hereunder and/or under the Security Agreement at the highest rate permitted by law.

Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed. Under no circumstances shall the undersigned be charged more than the highest rate of interest which lawfully may be charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby.

It is, therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceed the highest lawful rate, only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance thereof.

In the event that any payment due hereunder shall not be received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender.

This Note is a promissory note and is secured by a Security Agreement of even date herewith between the undersigned and the Lender (the "Security Agreement") affecting property more particularly described therein, and all of the covenants, conditions and agreements contained in the Security Agreement are by this reference incorporated herein and made a part hereof. At the option of the holder of this Note and upon the terms and conditions provided in the Security Agreement, upon (a) a default in making any payment of principal and interest hereunder when due and payable, and such default continuing beyond the applicable grace period, if any, or (b) the occurrence of an Event of Default (as such term is defined in the Security Agreement), the unpaid principal balance hereof and all accrued interest shall become immediately due and payable. In enforcing its rights under this Note and under such Security Agreement and other instruments delivered in connection with the loan represented hereby, the holder shall have the right and option to pursue its remedies with respect to this Note or to enforce the provisions of the Security Agreement or such other instruments, or any combination thereof, and either simultaneously or in such order as the holder shall deem in its best interest.

The undersigned, and all persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, whether suit be brought or not.

This Note may be prepaid in whole or in part at any time, provided that (i) the undersigned give the Lender written notice of the prepayment at least thirty (30) days but not more than forty-five (45) days prior to such prepayment, which notice shall expressly set forth the date such prepayment is to be made (the "Noticed Prepayment Date); (ii) all accrued interest has been paid to the date of such prepayment; (iii) the undersigned pay to the Lender a prepayment fee equal to an additional ninety (90) days' interest at the rate herein set forth on the amount of the principal being repaid; and (iv) if the prepayment is not made on the Noticed Prepayment Date, the undersigned shall provide the Lender with an additional thirty (30) days' prior written notice and designate a new Noticed Prepayment Date. This fee shall not apply if the loan is pre-paid after the 1st 12 months of the original or modified loan term. If this Note is prepaid in part, then any such payments shall be applied against the payments due hereunder in inverse order of maturity.

If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of New York), such required payment shall be due and payable on the immediately succeeding business day.

Notwithstanding any and all prepayment and other applicable penalties sent forth herein and in the other documents relating to this loan, if during the term of this Loan, and for a period of ninety (90) days thereafter, the borrower receives a solicited or unsolicited bona fide offer from a third party to provide Borrower with funds for the purpose of the repayment, in whole or in part, of this Loan, and Borrower wishes to accept such replacement financing, Borrower shall first provide to Lender the actual written evidence of such financing terms being offered by the third party. Lender shall have ten (10) business days from the receipt thereof to exercise the right "but not the obligation" to provide such financing to the Borrower at the terms set forth in the third party term sheet (which shall not be inclusive of any and all prepayment or other penalties set forth herein and in the other the documents relating to this Loan that Borrower will remain fully responsible for), and Borrower shall enter into a Loan modification agreement with Lender setting forth such new loan terms. If Lender fails to so elect within ten (10) business days, Borrower shall be permitted to accept the third party offer and repay all or part of the loan, in which case any and all prepayment and other applicable penalties shall be applied.

At any time during the term of this loan, Lender may require the Borrower to establish an automatic payment account, i.e., Electronic Funds Transfer, for the purpose of making loan payments in lieu of a voucher or check writing system. Within five (5) days of Lender giving the Borrower notice of such requirement, Borrower shall immediately furnish all information and authorizations that Lender requires to establish such automatic debit collection system, including but not limited to any and all checking accounts, bank accounts, and authorization required by the financial institution selected to establish such automatic payment and debit system. Borrower agrees that in the event Lender establishes such automatic payment account, Borrower will maintain a sufficient balance in such account to ensure that funds are available for making the loan payments to Lender on the respective due dates of such payments. The automatic debit will take place five (5) days after the stated due date. In the event that an automatic debit is returned by the Borrower's bank for any reason whatsoever, the account will be charged a $50.00 fee. The failure of Borrower to establish such automatic account and/or to furnish any other item requested by Lender for the purpose of establishing such account, and/or the failure of the Borrower to maintain a sufficient amount of funds in such account to insure that sufficient funds are available in such account to pay the loan payments as they become due, shall constitute an event of default by borrower under this Loan Agreement, the Promissory Note, and Security Agreement of even date giving Lender any and all such rights as the Lender may have in the event of a borrower's default.

Any payment of the principal balance of this Note after the Lender shall have declared the unpaid principal balance hereof and all accrued interest immediately due and payable in accordance with the provisions of this Note or the Security Agreement shall be deemed to be a voluntary prepayment for all purposes hereof, and a prepayment fee calculated pursuant to the provisions of the immediately preceding paragraph shall be payable with respect thereto.

This Note shall be governed by and interpreted in accordance with the laws of the State of Illinois.

Lincolnshire Service I, Corp.

By:_____

**Laurentiu Ionescu - President and Secretary**

STATE OF ILLINOIS)
         : ss.:
COUNTY OF COOK )


     On the **28th** day of **August, 2013**, before me personally came **Laurentiu Ionescu**, to me known, who, being by me duly sworn, did depose and say that he/she resides at **2175 Chruchill Lane, Highland Park, IL 60035**; that he/she is the **President and Secretary** of **Lincolnshire Service I, Corp.**, the corporations described in and which executed the foregoing instrument; and that he/she signed his/her name thereto by order of the board of directors of said corporations.


_____
Notary Public

```
*******************************
*      OFFICIAL SEAL           *
*      RITA RIVERA             *
* NOTARY PUBLIC, STATE OF ILLINOIS *
* My Commission Expires 08/28/2015 *
*******************************
```

4

# EXHIBIT 2

## FORBEARANCE AND LOAN MODIFICATION AGREEMENT

**This AGREEMENT** is made this _17th_ day of November, 2016, between IL 1, CORP.,IL 2, CORP., LINCOLNSHIRE SERVICE CORP., LINCOLNSHIRE SERVICE I, CORP., and LINCOLNSHIRE SERVICE II, CORP., all having a usual place of business at 3351 W. Addison Street, Chicago, IL 60618, individually and collectively ("The Borrower") and LAURENTIU IONESCU residing at 2175 Churchill Lane, Highland Park, IL 60035 the ("Guarantor") and MEDALLION BANK having an address at 1100 East 6600 South, Suite 510, Salt Lake City, Utah 84121 (the "Lender").

## W I T N E S S E T H :

**WHEREAS,** on or about March 19, 2014, IL 1, CORP. and IL 2, CORP. signed and delivered a Promissory Note to MEDALLION BANK in the amount of $1,168,200.00 and on November _17_ , 2016 with an effective date of November 4, 2016 entered into this Forbearance and Loan Modification Agreement with MEDALLION BANK, which among other provisions, extended the Maturity Date to May 4, 2018, reduced the interest rate to 4.5% with 1% of said interest being deferred and to be paid at the earlier of the following: at the end of 18 months or upon payment in full of the loan, and temporarily decreased the monthly payments of principal and interest. The Note as modified was guaranteed by LAURENTIU IONESCU; and

**WHEREAS,** on or about March 19, 2014, LINCOLNSHIRE SERVICE CORP and LINCOLNSHIRE SERVICE II, CORP signed and delivered a Promissory Note to MEDALLION BANK in the amount of $2,590,000.00 and on or about November _17_ , 2016 with an effective date of November 4, 2016 entered into this Forbearance and Loan Modification Agreement with MEDALLION BANK, which among other provisions, extended the Maturity Date to May 4, 2018, reduced the interest rate to 4.5% with 1% of said interest being deferred and to be paid at the following: at the earlier of 18 months or upon payment in full of the loan, and temporarily decreased the monthly payments of principal and interest. The Note as modified was guaranteed by LAURENTIU IONESCU; and

**WHEREAS** on July 9, 2014 LINCOLNSHIRE SERVICE CORP. signed and delivered a Promissory Note to MEDALLION BANK in the amount of $200,000.00 and on or about November _17,_ , 2016 with an effective date of November 4, 2016 entered into this Forbearance and Loan Modification Agreement Modification Agreement with MEDALLION BANK, which among other provisions, extended the Maturity Date to May 4, 2018, reduced the interest rate to 4.5% with 1% of said interest being deferred and to be paid at the following: at the earlier of 18 months or upon payment in full of the loan, and temporarily decreased the monthly payments of principal and interest. The Note as modified was guaranteed by LAURENTIU IONESCU; and

**WHEREAS** on August 28, 2013 LINCOLNSHIRE SERVICE I, CORP. signed and delivered a Promissory Note to MEDALLION BANK in the amount of $1,400,000.00 and on or about November _17_ , 2016 with an effective date of November 4, 2016 entered into a this

Initials _____

Forbearance and Loan Modification Agreement with MEDALLION BANK, which among other provisions, extended the Maturity Date to May 4, 2018, reduced the interest rate to 4.5% with 1% of said interest being deferred and to be paid at the following: at the earlier of 18 months or upon payment in full of the loan, and temporarily decreased the monthly payments of principal and interest. The Note as modified was guaranteed by LAURENTIU IONESCU; and

**WHEREAS** on or about August 28, 2013 LINCOLNSHIRE SERVICE II, CORP. signed and delivered a Promissory Note to MEDALLION BANK in the amount of $1,575,000.00 and on or about November 17, 2016 with an effective date of November 4, 2016 entered into this Forbearance and Loan Modification Agreement with MEDALLION BANK, which among other provisions, extended the Maturity Date to May 4, 2018, reduced the interest rate to 4.5% with 1% of said interest being deferred and to be paid at the following: at the earlier of 18 months or upon payment in full of the loan, and temporarily reduced the monthly payments of principal and interest. The Note was guaranteed LAURENTIU IONESCU.; and

**WHEREAS** the Amortization period utilized to calculate the modified monthly payments has been extended to 25 years; and

**WHEREAS** all of the afore listed Notes were and are secured by City of Chicago Taxicab Medallions and related equipment ("Collateral"); and

**WHEREAS** The Promissory Notes are further secured by Security Agreements; and

**WHEREAS** all of the afore listed Notes went into default as a result of failure to make payments and the Lender notified each Borrower and each Guarantor of the default; and

**WHEREAS** on or about November 4, 2016 LAURENTIU IONESCU acknowledged and agreed to an outline for this Forbearance Agreement for each of the afore listed Notes; and

**WHEREAS** each Borrower and Guarantor requested that the Lender forbear from taking further legal action against them and the Collateral and Additional Collateral; and

**WHEREAS** the Lender is willing to temporarily forbear from pursuing a secured party's sale of the Collateral of each of the Borrowers and foreclosure of the Additional Collateral and is willing to accept reduced monthly payments on some of the Notes, but only upon the following terms and conditions set forth herein:

1. Amounts Due

A. Each Borrower and Guarantor acknowledge and confirm that the principal amounts due under the Note from IL 1, CORP. and IL 2, CORP. to MEDALLION BANK dated March 19, 2014 in the original amount of $1,168,200.00, as of November 4, 2016 totals $1,047,638.52. In addition MEDALLION BANK has incurred attorney's fees and costs to date in addition to the above amount. MEDALLION BANK is not waiving the existing defaults and demand for full payment, but is only agreeing to a temporary forbearance in accordance with the terms contained herein.

B. Each Borrower and Guarantor acknowledge and confirm that the principal amounts due under the Note from LINCOLNSHIRE SERVICE CORP and LINCOLNSHIRE SERVICE II, CORP to MEDALLION BANK dated March 19, 2014 in the original amount of $2,590,000.00 as

Initials ____

of November 4, 2016 totals $ 2,322,704.97. In addition MEDALLION BANK has incurred attorney's fees and costs to date in addition to the above amount. MEDALLION BANK is not waiving the existing defaults and demand for full payment, but is only agreeing to a temporary forbearance in accordance with the terms contained herein.

C. Each Borrower and Guarantor acknowledge and confirm that the principal amounts due under the Note from LINCOLNSHIRE SERVICE CORP. to MEDALLION BANK dated July 9, 2014, in the original amount of $200,000.00 as of November 4 2016 totals $171,027.95. In addition MEDALLION BANK has incurred attorney's fees and costs to date in addition to the above amount. MEDALLION BANK is not waiving the existing defaults and demand for full payment, but is only agreeing to a temporary forbearance in accordance with the terms contained herein.

D. Each Borrower and Guarantor acknowledge and confirm that the principal amounts due under the Note from LINCOLNSHIRE SERVICE I, CORP. to MEDALLION BANK dated August 28, 2013, in the original amount of $1,400,000.00 as of November 4, 2016 totals $1,213,047.64. In addition MEDALLION BANK has incurred attorney's fees and costs to date in addition to the above amount. MEDALLION BANK is not waiving the existing defaults and demand for full payment, but is only agreeing to a temporary forbearance in accordance with the terms contained herein.

F. Each Borrower and Guarantor acknowledge and confirm that the principal amounts due under the Note from LINCOLNSHIRE SERVICE II, CORP. to MEDALLION BANK dated August 28, 2013, in the original amount of $1,575,000.00 as of November 4, 2016 totals $1,364,678.78. In addition MEDALLION BANK has incurred attorney's fees and costs to date in addition to the above amount. MEDALLION BANK is not waiving the existing defaults and demand for full payment, but is only agreeing to a temporary forbearance in accordance with the terms contained herein.

Each Borrower and Guarantor acknowledges and agrees that the amounts owed to MEDALLION BANK as set forth in paragraphs 1.A. through 1.F. above are true and correct and that none of the amounts are subject to any defenses, counterclaims, off-sets or reductions of any kind, either directly or indirectly and if there were any, they are hereby expressly waived and relinquished by each Borrower and Guarantor.

2. Payment.

In consideration of the Lender agreeing to temporarily forbear from taking further action against each Borrower and Guarantor, each Borrower and the Guarantor have agreed to pay as follows:

A. IL 1, CORP. and IL 2, CORP. shall continue to pay MEDALLION BANK on its Note dated March 19, 2014 in the original amount of $1,168,200.00, (said Note is modified effective November 4, 2016), the modified monthly payment of principal and interest to commence on November 21, 2016 of $5,273.03 and, monthly thereafter as specified for said Note in Schedule "A" attached hereto. The modified Note matures on May 4, 2018.

B. LINCOLNSHIRE SERVICE CORP and LINCOLNSHIRE SERVICE II, CORP shall continue to pay MEDALLION BANK on its Note dated March 19, 2014 in the original amount of $2,590,000.00, ( said Note is modified effective November 4, 2016), the modified monthly payment of principal and interest to commence on November 21, 2016 of $11,690.76 and thereafter as

specified for said Note in Schedule "A" attached hereto. The modified Note matures on May 4, 2018.

C. LINCOLNSHIRE SERVICE CORP. shall continue to pay MEDALLION BANK on its Note dated July 9, 2014, in the original amount of $200,000.00 ( said Note is modified effective November 4, 2016) , the modified monthly payment of principal and interest to commence on November 10, 2016 of $866.70 and thereafter as specified for said Note in Schedule "A" attached hereto. The modified Note matures on May 4, 2018.

D. LINCOLNSHIRE SERVICE I, CORP. shall continue to pay MEDALLION BANK on its Note dated August 28, 2013, in the original amount of $1,400,000.00, ( said Note is modified effective November 4, 2016), the modified monthly payment of principal and interest to commence on November 29, 2016 of $6,105.58 and thereafter as specified for said Note in Schedule "A" attached hereto. The modified Note matures on May 4, 2018.

E. LINCOLNSHIRE SERVICE II, CORP. shall continue to pay MEDALLION BANK on its Note dated August 28, 2013, in the original amount of $1,575,000.00, ( said Note is modified effective November 4, 2016) the modified monthly payment of principal and interest to commence on November 29, 2016 of $6,869.00 and thereafter as specified for said Note in Schedule "A" attached hereto. The modified Note matures on May 4, 2018.

F. In addition to the above payments, each Borrower and Guarantor agrees to pay to the Lender on November 4, 2016 the amount of $30,000.00 for interest to be applied to all loans on a pro-rata basis. The effective date of this Agreement will be as of November 4, 2016. In the event that Borrower fails to make all payments timely and in full within 10 days of the due date thereof, the Lender may proceed forthwith to enforce all of its rights under this Agreement and the loan documents and may inter alia, proceed immediately with a secured party sale of the Collateral of each of the Borrowers.

G. **The Borrowers and Guarantors acknowledge that the remaining balance of the current interest accruals, on all referenced loans noted above, as of November 4, 2016 and after application of the $30,000.00 payment is $96,442.49 as of November 4, 2016 and Borrower shall pay said sum, (in addition to the monthly loan payments) in full, without additional interest accruing on this amount, on or before November 4, 2017, (Twelve (12) months from the effective date hereof).**

3. Length of Agreement

The Lender's agreement to temporarily forbear from proceeding with further legal action against the Borrowers and Guarantors is for a period not to exceed eighteen months from the date of this Agreement, provided all payments are made punctually and in full, the interest so noted above is paid in accordance with the above provision and in full and all of the Borrowers' and Guarantors' obligations under this Agreement are fully carried out and there are no other defaults under any of the loan documents with any of the Borrowers and Guarantors. Lender reserves all rights under the Notes, Security Agreements and loan documents and is not waiving its rights thereunder as a matter of law.

Initials _____

4. Financial Statements

Each Borrower and Guarantor agrees to provide in form satisfactory to the Lender quarterly profit and loss statements within ten days after the end of each quarter commencing with the quarter ending December 31, 2016.

5. Cross Default and Cross Collateral

A default in any Note given to the Lender by any Borrower herein, shall be considered a default of all Notes, Security Agreements, and Guarantees related to said Notes and this Agreement. Furthermore, a default by any Borrower or Guarantor with respect to any other lender is a default under this Agreement and shall entitle the Lender to demand full payment of all Notes and Guarantees and proceed with legal action against each Borrower and Guarantor and the Collateral and Additional Collateral.

The collateral for each loan under this agreement shall be deemed collateral for all loans hereunder.

6. Confirmation and Ratification

Each Borrower and Guarantor hereby ratifies and confirms the validity and enforceability of each Note, Guaranty, Security Agreement, and other loan documents, directly or indirectly, relating to the foregoing and further warrant and represent that the Note, Guaranty Security Agreement, and other loan documents, are valid and binding obligations of the Borrower and Guarantor and remain in full force and effect without any off-sets, defense counterclaims or diminution of any kind, either directly or indirectly and that if there were any, they are hereby expressly waived by the Borrower and Guarantor.

7. Attorney's Fees and Costs

Each Borrower and the Guarantor acknowledge and agree that they are responsible for all of Lender's Attorneys and collection fees and costs in connection with any secured parties sales, foreclosure, litigation, and preparation and execution of this Agreement and all subsequent action and efforts by Lender to be paid in full.

8. Cooperation

Each Borrower and the Guarantor agrees to cooperate with Lender and will perform such other acts and sign such other documents, instruments and certificates as may be reasonably necessary or desirable in order to carry out the purposes and provisions of this Agreement.

9. Time of Essence

Time is of the essence of this Agreement.

10. Events of Default

The occurrence of any of the following events shall also constitute an "Event of Default" hereunder:

Initials _____

(a) If any Borrower or Guarantor fails to pay any of the installments under Paragraph 2 of this Agreement, on or before the date on which such installment is due, which default remains uncured for ten (10) days after the due date; or

(b) If any Borrower or Guarantor fails to fully and punctually perform any of its agreements contained herein; or

(c) If any Borrower or Guarantor defaults under the terms of any of the loan documents herein before signed by any of them.

11. Cumulative Remedies.

The rights and remedies of Lender under this Agreement are distinct, separate and cumulative, and Lender shall not be limited in electing any remedy hereunder.

12. Acknowledgments.

Borrower and Guarantor acknowledge that they have the right to retain counsel in connection with this Agreement, and have elected not to retain an attorney to represent them in connection herewith. Borrower and Guarantor further acknowledge that they have entered into this Agreement based solely upon the terms hereof, and in doing so are not relying upon any representation, promise or statement not expressly set forth herein in writing.

13. Modification.

No modification, amendment or waiver of any of the provisions of this Agreement or the Note guarantee or other loan documents is effective unless executed in writing by the Borrower, Guarantors and Lender, together with such modification, amendment, or waiver, and if such party is Lender, then by a duly authorized officer thereof.

14. Security

Each Borrower and Guarantor acknowledge that the security interest granted to Lender pursuant to the loan documents and valid and enforceable and that Lender has a first priority perfected security interest in the Collateral and that the Collateral and Additional Collateral secures the Note of each of the Borrowers in addition to its own Note and such other obligations of the Borrower and Guarantor to Lender now existing or hereafter arising, whether under the loan documents or otherwise.

15. Waiver

The execution of this Agreement by Lender is not intended by the parties and shall not be construed as a waiver of the Borrowers or Guarantors existing default. It being acknowledged and agreed that no such waiver shall be affected hereby, but Lender's Agreement set forth herein is only an Agreement temporarily to forbear from exercising its rights to proceed with various actions to collect the outstanding Notes and Guarantees. This Agreement shall not be affected by any delay, or full or partial waiver or release by Lender of any rights under this Agreement.

Initials _____

16. <u>Severability</u>.

In the event that any part of this Agreement is determined by a Court of competent jurisdiction to be unenforceable, the balance of this Agreement shall remain in full force and effect.

17. <u>Waiver of Jury Trial</u>.

EACH BORROWER AND GUARANTOR AGREE THAT THEY WILL TAKE NO LEGAL ACTION TO FURTHER DELAY OR STOP ANY SECURED PARTY SALE OF THE COLLATERAL OR ADDITIONAL COLLATERAL OF ANY BORROWER OR GUARANTOR IN THE EVENT OF FURTHER DEFAULT, AND FURTHER AGREE TO WAIVE A JURY TRIAL OF ANY ISSUES THAT MAY ARISE.

18. <u>Governing Law</u>

This Agreement shall be governed and construed in accordance with the laws of the State of Illinois.

19. <u>Binding Effect</u>

This Agreement shall be binding upon the parties hereto, their heirs, successors and assigns.

       **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the day and year first above written.

*[Remainder of page intentionally left blank; signature page to follow.]*

Initials _____

IL 1, CORP.

_____
By: LAURENTIU IONESCU
President and Secretary

IL 2, CORP.

_____
By: LAURENTIU IONESCU
President and Secretary

LINCOLNSHIRE SERVICE CORP.

_____
By: LAURENTIU IONESCU
President and Secretary

LINCOLNSHIRE SERVICE I, CORP.

_____
By: LAURENTIU IONESCU
President and Secretary

LINCOLNSHIRE SERVICE II, CORP.

_____
By: LAURENTIU IONESCU
President and Secretary

_____
LAURENTIU IONESCU
Guarantor

STATE OF ILLINOIS )
                 : ss.:
COUNTY OF COOK )

On this _11th_ day of November 2016, before me, the undersigned notary public, personally appeared LAURENTIU IONESCU, individually and as President, Secretary, Director and Sole Stockholder of IL 1, CORP., IL 2, CORP., LINCOLNSHIRE SERVICE CORP., LINCOLNSHIRE SERVICE I, CORP. and LINCOLNSHIRE SERVICE II, CORP, who proved to me through satisfactory evidence of identification which was Illinois Drivers License, to be the person who signed the preceding document in my presence, and who swore or affirmed to me that the statements contained therein are truthful and accurate to the best of his knowledge and belief.

OFFICIAL SEAL
BERNARD N BLOCK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/02/18

_____
Notary Public:
My Commission Expires:

By: _____
William H. Osborn, III
S. V. P. Asset Recovery
As Servicing Agent for MEDALLION BANK

Initials _____

## LAURENTIN IONESCU 11/4/2016

SCHEDULE A TO FORBEARANCE & MODIFICATION

| Guarantor | LN# | Lender | Borrower | Balance | INT DUE 11/4/2017 | Maturity | Rate | Payment Date* | Meds | Payment |
|---|---|---|---|---|---|---|---|---|---|---|
| LAURENTIN IONESCU | 20003575 | MBNK | IL 1 CORP & IL 2 CORP | 1,047,638.52 | $ 17,401.65 | 5/4/2018 | 4.50% | 21st | 6 | $5,273.03 |
| LAURENTIN IONESCU | 20003574 | MBNK | LINCOLNSHIRE SERV & LINCOLN II | 2,322,704.97 | $ 38,570.53 | 5/4/2018 | 4.50% | 21st | 14 | $11,690.76 |
| LAURENTIN IONESCU | 20003654 | MBNK | LINCOLNSHIRE SERVICE CORP | 171027.95 | $ 209.51 | 5/4/2018 | 4.50% | 10th | 2 | $866.70 |
| LAURENTIN IONESCU | 20003449 | MBNK | LINCOLNSHIRE SERVICE I CORP | 1,213,047.64 | $ 19,184.45 | 5/4/2018 | 4.50% | 29th | 8 | $6,105.58 |
| LAURENTIN IONESCU | 20003451 | MBNK | LINCOLNSHIRE SERVICE II CORP | 1,364,678.78 | $ 21,076.35 | 5/4/2018 | 4.50% | 29th | 9 | $6,869.00 |
| | | | Totals | 6,122,468.84 | $ 96,442.49 | | | | 39 | $54,464.88 |

*Payment date on the above to commence in November, 2016 and serially thereafter for 18 months as so noted in the forbearance and modification agreement.

IONESCU
FORBEARANCE AND LOAN MODIFICATION AGREEMENT
Schedule A

Initials _____

# EXHIBIT 3

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173 direct
(312) 780-1212 fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7523 70

Lincolnshire Service I, Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

Re:    **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service I, Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, (i) that certain Promissory Note dated as of August 28, 2013 made by the Borrower payable to the Lender in the original principal amount of $1,400,000.00 (as modified and in effect, the "**Note**") and (ii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender and the Borrower, among others (together with the Note and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that one or more events of default have occurred as a result of the Borrower's failure to repay all outstanding amounts owed to the Lender under the Loan Documents upon maturity (the "**Stated Event of Default**").  As a result thereof, all amounts owed to Lender under the Loan Documents are due and payable in full, and the Lender hereby makes **DEMAND** upon the Borrower for repayment in full of all amounts owed by Borrower under the Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, as a result of the Stated Event of Default, interest on the outstanding principal balance of the Note is accruing and shall continue to accrue at the applicable default rate of interest set forth in the Note.

July 6, 2018
Page 2

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Borrower, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Note or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on the Borrower's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Note and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:     Mr. Tom Katsigiannis (by email)
        Mr. Anthony Hood (by email)
        Mr. Frank Natoli (by email)
        Douglas K. Clarke, Esq. (by email)

2324742.1

# EXHIBIT 4

## GUARANTY
Medallion # 683TX, 1048TX, 1185TX, 1360TX, 1552TX, 2792TX, 2918TX, 3535TX

In consideration of financial accommodations given or to be given or continued to **Lincolnshire Service I, Corp.** (the "Borrower"), by Medallion Bank (the "Lender"), the undersigned as primary obligor and not merely as a surety irrevocably and unconditionally guarantees to the Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities.

The term "liabilities of the Borrower" shall include duties, debts, liabilities and obligations of the Borrower (or its successors, assigns or legal representatives) to the Lender, present or future, whether now or hereafter existing, contingent or absolute, howsoever arising or incurred or evidenced, including, without limitation, the duties, debts, liabilities and obligations of the Borrower under a certain Security Agreement dated **August 28, 2013** between the Borrower and the Lender and under a certain Promissory Note of even date herewith given by the Borrower to the Lender and evidencing a debt in the sum of $1,400,000.00.

The undersigned waives notice of acceptance of this guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking other action by the Lender against, and any other notice to, any party liable thereon (including the undersigned).

The Lender may at any time and from time to time (whether or not after revocation or termination of this guaranty) without the consent of or (except as shall be required by applicable statute and cannot be waived) notice to the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part:

(1) change the manner, place or terms of payment, and/or change or extend the time of payment of, renew or alter, any liability of the Borrower, any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the liabilities of the Borrower as so changed, extended, renewed or altered;

(2) sell, exchange, release, surrender, realize upon or otherwise deal with any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting;

(4) settle or compromise any liability hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Lender and the undersigned; and

(5) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Borrower to the Lender regardless of what liability or liabilities of the Borrower remain unpaid.

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned.

This guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. As to each of the undersigned, this guaranty shall continue until written notice of revocation signed by such undersigned, or until written notice of the death of such undersigned shall in each case have been actually received by the Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause of, any one or more of the remainder of the undersigned, or of the Borrower or of anyone liable in any manner for the liabilities hereby guaranteed or of the liabilities (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase or change in personnel of any one or more of the undersigned which may be a partnership. No revocation or termination hereof shall affect in any manner rights arising under this guaranty with respect to (a) liabilities that shall have been created, contracted, assumed or incurred prior to receipt by the Lender of written notice of such revocation or termination or (b) liabilities which shall have been created, contracted, assumed or incurred after receipt of such written notice pursuant to any contract entered into by the Lender prior to receipt of such notice; and the sole effect of revocation or termination hereof shall be to exclude from this guaranty liabilities thereafter arising that are unconnected with liabilities therefore arising or transactions theretofore entered into.

All notices provided to be given to the Lender herein shall be sent by registered, certified mail, or federal express, return receipt requested.

Any and all rights and claims of the undersigned against the Borrower or any of its property, arising by reason of any payment by the undersigned to the Lender pursuant to the provisions of this guaranty, shall be subordinate and subject in right of payment to the prior payment in full of all liabilities of the Borrower to the Lender.

The happening of any of the following events shall constitute an "Event of Default" under this guaranty:

(a) any default with respect to payment or performance of the liabilities of the Borrower;

(b) any failure to perform and/or breach by the undersigned of any of the terms, covenants and conditions of this guaranty or the Pledge Agreement between the undersigned and the Lender of even date herewith or any other document or instrument delivered in connection herewith and securing the performance hereof by any of the undersigned;

(c) the death or insolvency (however evidenced) of the Borrower or any person (including the undersigned) who is liable directly or indirectly in respect of any of the liabilities of the Borrower;

(d) any change in the financial condition of the Borrower or any aforesaid person that the Lender, in its sole discretion, deems to be adverse;

(e) the suspension of business of the Borrower or any aforesaid person;

(f) the issuance of any warrant, process or order of attachment, garnishment or other lien and/or the filing of a lien as a result thereof against any of the property of the Borrower or any aforesaid person;

(g) the Borrower or any aforesaid person makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any aforesaid person or for any property of any of them, or any proceeding is commenced by or against the Borrower or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute;

(h) it appears that any representation in any financial or other statement of the Borrower or any aforesaid person, delivered to the Lender by or on behalf of the Borrower or such person, is untrue or incomplete.

Upon the occurrence of an Event of Default, and at any time thereafter, the Lender may, without notice to the Borrower or any aforesaid person, make the liabilities of the Borrower to the Lender, whether or not then due, immediately due from and payable hereunder by the undersigned, and the Lender shall be entitled to enforce the obligations of the undersigned hereunder.

If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the liabilities of the Borrower and the Lender repays all or part of said amount of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of the Borrower, and the undersigned shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by the Borrower or others (including the undersigned), with respect to any of the liabilities of the Borrower shall, if the statute of limitations in favor of the undersigned against the Lender shall have commenced to run, toll the running of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

The undersigned shall pay to the Lender all costs and expenses, including filing fees and attorneys' fees, incurred by the Lender in connection with the custody, care, preservation or collection of any of the property of the undersigned or in seeking to enforce any of the liabilities or obligations of the undersigned hereunder.

The Lender shall have the right, at any time and from time to time, without notice, to sell, assign, transfer or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of such rights shall have the right to enforce this guaranty, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were by name specifically given such right. The Lender shall have an unimpaired right to enforce this guaranty for its benefit to that portion of the rights hereunder that were not sold, assigned, transferred or otherwise disposed of.

No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the undersigned to the Lender in any other respect at any other time.

The undersigned waives the right of trial by jury in the event of any litigation between the parties hereto in respect of any matter arising under this guaranty and agrees that, should the Lender bring any judicial proceedings in relation to any such matter, the undersigned will not interpose any counterclaim or setoff of any nature.

This guaranty and the rights and obligations of the Lender and of the undersigned hereunder shall be deemed to be a contract made under and shall be governed and construed in accordance with the laws of the State of Illinois, and this guaranty is binding upon the undersigned, his, their, or its executors, administrators, successors or assigns, and shall inure to the benefit of the Lender, its successors or assigns. In the event that the Lender brings any action or suit in any court of record of the State of Illinois or of the United States to enforce any or all liabilities of the undersigned hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address below set forth.

In case one or more of the provisions contained in this guaranty shall be or shall be deemed to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

The rights, remedies, powers and privileges of the Lender hereunder are cumulative and not conclusive of any other rights, remedies, powers or privileges now or hereafter existing at law or in equity.

6

This guaranty may be signed in any number of counterparts with the same effect as if the signatures thereto and hereof were upon the same instrument.

The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. Anyone signing this guaranty shall be bound hereby, whether or not anyone else signs this guaranty at any time. The term "Lender" includes any agent of the Lender acting for it.

This Agreement is secured by a Pledge Agreement dated of even date herewith between the undersigned and the Lender.

Dated: __August 28, 2013__

_____
Laurentiu Ionescu-
Individual Guarantor

Address: **2175 Chruchill Lane, Highland Park, IL 60035**

S.S # / Tax I.D.: ███████████████

7

STATE OF ILLINOIS)
          : ss.:
COUNTY OF COOK)

On the **28th** day of **August, 2013**, before me personally came <u>Laurentiu Ionescu</u>, President and Secretary, Individual Guarantor, to me known to be the individual(s) described in and which executed the foregoing instrument; and that he/she acknowledged that he/she executed the same.

_____
Notary Public

```
OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015
```

8

# EXHIBIT 5

# RIEMER | BRAUNSTEIN

Phillip J. Block
pblock@riemerlaw.com
(312) 780-1173 direct
(312) 780-1212 fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 51

Mr. Laurentiu Ionescu
2175 Churchill Lane
Highland Park, Illinois 60035

      Re:    **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

      Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service I, Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, the following: (i) that certain Promissory Note dated as of August 28, 2013 made by the Borrower payable to the Lender in the original principal amount of $1,400,000.00 (as modified and in effect, the "**Note**"); (ii) that certain Guaranty dated as of August 28, 2013 and executed by you, Laurentiu Ionescu (the "**Guarantor**"), in favor of the Lender (the "**Guaranty**"); and (iii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender, the Borrower and the Guarantor, among others (together with the Note, the Guaranty and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

      Please be advised that the Borrower is in default of its obligations to the Lender. Accordingly, as a result of the foregoing, and in accordance with the terms and conditions of the Guaranty, the Lender hereby makes **DEMAND** upon you, the Guarantor, for the immediate payment in full of all amounts due under the Guaranty and other Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

      Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Guarantor, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Guaranty or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or

July 6, 2018
Page 2

hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Guaranty or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note, the Guaranty, or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Guaranty and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc: Mr. Tom Katsigiannis (by email)
Mr. Anthony Hood (by email)
Mr. Frank Natoli (by email)
Douglas K. Clarke, Esq. (by email)

2324743.1

# EXHIBIT 6

**Medallion Bank**

**PROMISSORY NOTE**

Medallion # 2107TX, 3540TX, 655TX, 3819TX, 4002TX, 4372TX, 5644TX, 5649TX, 5699TX

$1,575,000.00                                                                                          August 28, 2013

FOR VALUE RECEIVED, the undersigned, Lincolnshire Service II, Corp. (the "Borrower"), located at 3351 W. Addison Street, Chicago, IL 60618, promises to pay to the order of Medallion Bank (the "Lender"), in lawful money of the United States, at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **One Million Five Hundred Seventy-Five Thousand Dollars ($1,575,000.00)**, with interest thereon to be computed and paid from the date of this Note until **August 28, 2018** (the "Maturity Date"), at the rate of **4 and 75/100 percent (4.75%)** per annum except as set forth below, in constant monthly installments of **$12,307.18**, commencing on **September 28, 2013**, and on the **28th** day of each month thereafter until the Maturity Date, at which time all unpaid principal balance and accrued interest shall be due and payable. All payments, including but not limited to, monthly installment payments, shall be applied first to any outstanding charges, fees, costs or expenses incurred, then to accrued interest, and then to the outstanding principal.

If the execution of this note and the disbursement of funds there from do not occur simultaneously, then Lender may elect, in its sole untrammeled discretion, to extend: (1) the initial date upon which interest begins to accrue, or (2) the date upon which the loan ultimately matures, or both. But such extension will in no event exceed the number of days which elapsed between execution and initial disbursement of the loan proceeds or any portion thereof.

Notwithstanding the foregoing, if (i) there shall occur an "Event of Default" under the Security Agreement described below (as such term is defined in the Security Agreement) or (ii) the Maturity Date shall occur, or (iii) any sum shall not be paid when it is due hereunder, then from and after any such occurrence or nonpayment the undersigned shall pay interest to the Lender, on demand, on the entire principal amount then outstanding hereunder and/or under the Security Agreement at the highest rate permitted by law.

Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed. Under no circumstances shall the undersigned be charged more than the highest rate of interest which lawfully may be charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby.

It is, therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceed the highest lawful rate, only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance thereof.

In the event that any payment due hereunder shall not be received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender.

This Note is a promissory note and is secured by a Security Agreement of even date herewith between the undersigned and the Lender (the "Security Agreement") affecting property more particularly described therein, and all of the covenants, conditions and agreements contained in the Security Agreement are by this reference incorporated herein and made a part hereof. At the option of the holder of this Note and upon the terms and conditions provided in the Security Agreement, upon (a) a default in making any payment of principal and interest hereunder when due and payable, and such default continuing beyond the applicable grace period, if any, or (b) the occurrence of an Event of Default (as such term is defined in the Security Agreement), the unpaid principal balance hereof and all accrued interest shall become immediately due and payable. In enforcing its rights under this Note and under such Security Agreement and other instruments delivered in connection with the loan represented hereby, the holder shall have the right and option to pursue its remedies with respect to this Note or to enforce the provisions of the Security Agreement or such other instruments, or any combination thereof, and either simultaneously or in such order as the holder shall deem in its best interest.

The undersigned, and all persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, whether suit be brought or not.

This Note may be prepaid in whole or in part at any time, provided that (i) the undersigned give the Lender written notice of the prepayment at least thirty (30) days but not more than forty-five (45) days prior to such prepayment, which notice shall expressly set forth the date such prepayment is to be made (the "Noticed Prepayment Date"); (ii) all accrued interest has been paid to the date of such prepayment; (iii) the undersigned pay to the Lender a prepayment fee equal to an additional ninety (90) days' interest at the rate herein set forth on the amount of the principal being repaid; and (iv) if the prepayment is not made on the Noticed Prepayment Date, the undersigned shall provide the Lender with an additional thirty (30) days' prior written notice and designate a new Noticed Prepayment Date. This fee shall not apply if the loan is pre-paid after the 1st 12 months of the original or modified loan term. If this Note is prepaid in part, then any such payments shall be applied against the payments due hereunder in inverse order of maturity.

If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of New York), such required payment shall be due and payable on the immediately succeeding business day.

2

Notwithstanding any and all prepayment and other applicable penalties sent forth herein and in the other documents relating to this loan, if during the term of this Loan, and for a period of ninety (90) days thereafter, the borrower receives a solicited or unsolicited bona fide offer from a third party to provide Borrower with funds for the purpose of the repayment, in whole or in part, of this Loan, and Borrower wishes to accept such replacement financing, Borrower shall first provide to Lender the actual written evidence of such financing terms being offered by the third party. Lender shall have ten (10) business days from the receipt thereof to exercise the right "but not the obligation" to provide such financing to the Borrower at the terms set forth in the third party term sheet (which shall not be inclusive of any and all prepayment or other penalties set forth herein and in the other the documents relating to this Loan that Borrower will remain fully responsible for), and Borrower shall enter into a Loan modification agreement with Lender setting forth such new loan terms. If Lender fails to so elect within ten (10) business days, Borrower shall be permitted to accept the third party offer and repay all or part of the loan, in which case any and all prepayment and other applicable penalties shall be applied.

At any time during the term of this loan, Lender may require the Borrower to establish an automatic payment account, i.e., Electronic Funds Transfer, for the purpose of making loan payments in lieu of a voucher or check writing system. Within five (5) days of Lender giving the Borrower notice of such requirement, Borrower shall immediately furnish all information and authorizations that Lender requires to establish such automatic debit collection system, including but not limited to any and all checking accounts, bank accounts, and authorization required by the financial institution selected to establish such automatic payment and debit system. Borrower agrees that in the event Lender establishes such automatic payment account, Borrower will maintain a sufficient balance in such account to ensure that funds are available for making the loan payments to Lender on the respective due dates of such payments. The automatic debit will take place five (5) days after the stated due date. In the event that an automatic debit is returned by the Borrower's bank for any reason whatsoever, the account will be charged a $50.00 fee. The failure of Borrower to establish such automatic account and/or to furnish any other item requested by Lender for the purpose of establishing such account, and/or the failure of the Borrower to maintain a sufficient amount of funds in such account to insure that sufficient funds are available in such account to pay the loan payments as they become due, shall constitute an event of default by borrower under this Loan Agreement, the Promissory Note, and Security Agreement of even date giving Lender any and all such rights as the Lender may have in the event of a borrower's default.

Any payment of the principal balance of this Note after the Lender shall have declared the unpaid principal balance hereof and all accrued interest immediately due and payable in accordance with the provisions of this Note or the Security Agreement shall be deemed to be a voluntary prepayment for all purposes hereof, and a prepayment fee calculated pursuant to the provisions of the immediately preceding paragraph shall be payable with respect thereto.

This Note shall be governed by and interpreted in accordance with the laws of the State of Illinois.

**Lincolnshire Service II, Corp.**

By: _____

**Laurentiu Ionescu - President and Secretary**

STATE OF ILLINOIS)
      : ss.:
COUNTY OF COOK )

On the <u>28th</u> day of <u>August, 2013</u>, before me personally came <u>Laurentiu Ionescu</u>, to me known, who, being by me duly sworn, did depose and say that he/she resides at <u>2175 Chruchill Lane, Highland Park, IL 60035</u>; that he/she is the **President and Secretary** of <u>Lincolnshire Service II, Corp.,</u> the corporations described in and which executed the foregoing instrument; and that he/she signed his/her name thereto by order of the board of directors of said corporations.

_____
Notary Public

```
OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015
```

4

# EXHIBIT 7

# RIEMER | BRAUNSTEIN

Phillip J. Block
pblock@riemerlaw.com
(312) 780-1173 direct
(312) 780-1212 fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 44

Lincolnshire Service II, Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

      Re:    **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

      Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service II, Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, (i) that certain Promissory Note dated as of August 28, 2013 made by the Borrower payable to the Lender in the original principal amount of $1,575,000.00 (as modified and in effect, the "**Note**") and (ii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender and the Borrower, among others (together with the Note and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

      Please be advised that one or more events of default have occurred as a result of the Borrower's failure to repay all outstanding amounts owed to the Lender under the Loan Documents upon maturity (the "**Stated Event of Default**"). As a result thereof, all amounts owed to Lender under the Loan Documents are due and payable in full, and the Lender hereby makes **DEMAND** upon the Borrower for repayment in full of all amounts owed by Borrower under the Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

      Please be further advised that, as a result of the Stated Event of Default, interest on the outstanding principal balance of the Note is accruing and shall continue to accrue at the applicable default rate of interest set forth in the Note.

July 6, 2018
Page 2

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Borrower, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Note or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on the Borrower's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Note and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:    Mr. Tom Katsigiannis (by email)
       Mr. Anthony Hood (by email)
       Mr. Frank Natoli (by email)
       Douglas K. Clarke, Esq. (by email)

2325625.1

# EXHIBIT 8

## GUARANTY
Medallion # 2107TX, 3540TX, 3655TX, 3819TX, 4002TX, 4372TX, 5644TX, 5649TX, 5699TX

In consideration of financial accommodations given or to be given or continued to **Lincolnshire Service II, Corp.** (the "Borrower"), by Medallion Bank (the "Lender"), the undersigned as primary obligor and not merely as a surety irrevocably and unconditionally guarantees to the Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities.

The term "liabilities of the Borrower" shall include duties, debts, liabilities and obligations of the Borrower (or its successors, assigns or legal representatives) to the Lender, present or future, whether now or hereafter existing, contingent or absolute, howsoever arising or incurred or evidenced, including, without limitation, the duties, debts, liabilities and obligations of the Borrower under a certain Security Agreement dated **August 28, 2013** between the Borrower and the Lender and under a certain Promissory Note of even date herewith given by the Borrower to the Lender and evidencing a debt in the sum of $1,575,000.00.

The undersigned waives notice of acceptance of this guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking other action by the Lender against, and any other notice to, any party liable thereon (including the undersigned).

The Lender may at any time and from time to time (whether or not after revocation or termination of this guaranty) without the consent of or (except as shall be required by applicable statute and cannot be waived) notice to the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part:

(1) change the manner, place or terms of payment, and/or change or extend the time of payment of, renew or alter, any liability of the Borrower, any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the liabilities of the Borrower as so changed, extended, renewed or altered;

(2) sell, exchange, release, surrender, realize upon or otherwise deal with any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting;

(4) settle or compromise any liability hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Lender and the undersigned; and

(5) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Borrower to the Lender regardless of what liability or liabilities of the Borrower remain unpaid.

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned.

This guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. As to each of the undersigned, this guaranty shall continue until written notice of revocation signed by such undersigned, or until written notice of the death of such undersigned shall in each case have been actually received by the Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause of, any one or more of the remainder of the undersigned, or of the Borrower or of anyone liable in any manner for the liabilities hereby guaranteed or of the liabilities (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase or change in personnel of any one or more of the undersigned which may be a partnership. No revocation or termination hereof shall affect in any manner rights arising under this guaranty with respect to (a) liabilities that shall have been created, contracted, assumed or incurred prior to receipt by the Lender of written notice of such revocation or termination or (b) liabilities which shall have been created, contracted, assumed or incurred after receipt of such written notice pursuant to any contract entered into by the Lender prior to receipt of such notice; and the sole effect of revocation or termination hereof shall be to exclude from this guaranty liabilities thereafter arising that are unconnected with liabilities therefore arising or transactions theretofore entered into.

All notices provided to be given to the Lender herein shall be sent by registered, certified mail, or federal express, return receipt requested.

Any and all rights and claims of the undersigned against the Borrower or any of its property, arising by reason of any payment by the undersigned to the Lender pursuant to the provisions of this guaranty, shall be subordinate and subject in right of payment to the prior payment in full of all liabilities of the Borrower to the Lender.

The happening of any of the following events shall constitute an "Event of Default" under this guaranty:

(a) any default with respect to payment or performance of the liabilities of the Borrower;

(b) any failure to perform and/or breach by the undersigned of any of the terms, covenants and conditions of this guaranty or the Pledge Agreement between the undersigned and the Lender of even date herewith or any other document or instrument delivered in connection herewith and securing the performance hereof by any of the undersigned;

(c) the death or insolvency (however evidenced) of the Borrower or any person (including the undersigned) who is liable directly or indirectly in respect of any of the liabilities of the Borrower;

(d) any change in the financial condition of the Borrower or any aforesaid person that the Lender, in its sole discretion, deems to be adverse;

(e) the suspension of business of the Borrower or any aforesaid person;

(f) the issuance of any warrant, process or order of attachment, garnishment or other lien and/or the filing of a lien as a result thereof against any of the property of the Borrower or any aforesaid person;

(g) the Borrower or any aforesaid person makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any aforesaid person or for any property of any of them, or any proceeding is commenced by or against the Borrower or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute;

(h) it appears that any representation in any financial or other statement of the Borrower or any aforesaid person, delivered to the Lender by or on behalf of the Borrower or such person, is untrue or incomplete.

Upon the occurrence of an Event of Default, and at any time thereafter, the Lender may, without notice to the Borrower or any aforesaid person, make the liabilities of the Borrower to the Lender, whether or not then due, immediately due from and payable hereunder by the undersigned, and the Lender shall be entitled to enforce the obligations of the undersigned hereunder.

If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the liabilities of the Borrower and the Lender repays all or part of said amount of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of the Borrower, and the undersigned shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by the Borrower or others (including the undersigned), with respect to any of the liabilities of the Borrower shall, if the statute of limitations in favor of the undersigned against the Lender shall have commenced to run, toll the running of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

The undersigned shall pay to the Lender all costs and expenses, including filing fees and attorneys' fees, incurred by the Lender in connection with the custody, care, preservation or collection of any of the property of the undersigned or in seeking to enforce any of the liabilities or obligations of the undersigned hereunder.

The Lender shall have the right, at any time and from time to time, without notice, to sell, assign, transfer or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of such rights shall have the right to enforce this guaranty, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were by name specifically given such right. The Lender shall have an unimpaired right to enforce this guaranty for its benefit to that portion of the rights hereunder that were not sold, assigned, transferred or otherwise disposed of.

No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the undersigned to the Lender in any other respect at any other time.

The undersigned waives the right of trial by jury in the event of any litigation between the parties hereto in respect of any matter arising under this guaranty and agrees that, should the Lender bring any judicial proceedings in relation to any such matter, the undersigned will not interpose any counterclaim or setoff of any nature.

This guaranty and the rights and obligations of the Lender and of the undersigned hereunder shall be deemed to be a contract made under and shall be governed and construed in accordance with the laws of the State of Illinois, and this guaranty is binding upon the undersigned, his, their, or its executors, administrators, successors or assigns, and shall inure to the benefit of the Lender, its successors or assigns. In the event that the Lender brings any action or suit in any court of record of the State of Illinois or of the United States to enforce any or all liabilities of the undersigned hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address below set forth.

In case one or more of the provisions contained in this guaranty shall be or shall be deemed to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

The rights, remedies, powers and privileges of the Lender hereunder are cumulative and not conclusive of any other rights, remedies, powers or privileges now or hereafter existing at law or in equity.

This guaranty may be signed in any number of counterparts with the same effect as if the signatures thereto and hereof were upon the same instrument.

The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. Anyone signing this guaranty shall be bound hereby, whether or not anyone else signs this guaranty at any time. The term "Lender" includes any agent of the Lender acting for it.

This Agreement is secured by a Pledge Agreement dated of even date herewith between the undersigned and the Lender.

Dated: <u>August 28, 2013</u>

_____        _____
                                         **Laurentiu Ionescu-**
                                         Individual Guarantor

                                         Address: **2175 Chruchill Lane, Highland Park, IL 60035**

                                         S.S # / Tax I.D.: ███████ / ███████

7

STATE OF ILLINOIS)
: ss.:
COUNTY OF COOK)

On the **28th** day of **August, 2013**, before me personally came Laurentiu Ionescu, President and Secretary, Individual Guarantor, to me known to be the individual(s) described in and which executed the foregoing instrument; and that he/she acknowledged that he/she executed the same.

_____
Notary Public

OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015

8

# EXHIBIT 9

# RIEMER │ BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 37

Mr. Laurentiu Ionescu
2175 Churchill Lane
Highland Park, Illinois 60035

      Re:    **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service II, Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, the following:  (i) that certain Promissory Note dated as of August 28, 2013 made by the Borrower payable to the Lender in the original principal amount of $1,575,000.00 (as modified and in effect, the "**Note**"); (ii) that certain Guaranty dated as of August 28, 2013 and executed by you, Laurentiu Ionescu (the "**Guarantor**"), in favor of the Lender (the "**Guaranty**"); and (iii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender, the Borrower and the Guarantor, among others (together with the Note, the Guaranty and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that the Borrower is in default of its obligations to the Lender.  Accordingly, as a result of the foregoing, and in accordance with the terms and conditions of the Guaranty, the Lender hereby makes **DEMAND** upon you, the Guarantor, for the immediate payment in full of all amounts due under the Guaranty and other Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Guarantor, except as may be required by law.  However, any failure or delay by the Lender in exercising any of its rights under the Guaranty or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or

July 6, 2018
Page 2

hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Guaranty or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note, the Guaranty, or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Guaranty and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:     Mr. Tom Katsigiannis (by email)
        Mr. Anthony Hood (by email)
        Mr. Frank Natoli (by email)
        Douglas K. Clarke, Esq. (by email)

2325626.1

# EXHIBIT 10

**Medallion Bank**

**PROMISSORY NOTE**

Medallion # 75TX, 134TX, 204TX, 640TX, 796TX, 819TX, 894TX, 999TX, 1319TX, 1988TX, 3735TX, 4225TX, 4303TX, 2888TX

$2,590,000.00

March 19, 2014

FOR VALUE RECEIVED, the undersigned, Lincolnshire Service Corp. and Lincolnshire Service II, Corp. (the "Borrower"), located at 3351 W. Addison Street, Chicago, IL 60618, promises to pay to the order of Medallion Bank (the "Lender"), in lawful money of the United States, at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **Two Million Five Hundred Ninety Thousand Dollars ($2,590,000.00)**, with interest thereon to be computed and paid from the date of this Note until **March 19, 2018** (the "Maturity Date"), at the rate of **4 and 75/100** percent **(4.75%)** per annum except as set forth below, in constant monthly installments of **$20,241.29**, commencing on **April 19, 2014**, and on the **19th** day of each month thereafter until the Maturity Date, at which time all unpaid principal balance and accrued interest shall be due and payable. All payments, including but not limited to, monthly installment payments, shall be applied first to any outstanding charges, fees, costs or expenses incurred, then to accrued interest, and then to the outstanding principal.

If the execution of this note and the disbursement of funds there from do not occur simultaneously, then Lender may elect, in its sole untrammeled discretion, to extend: (1) the initial date upon which interest begins to accrue, or (2) the date upon which the loan ultimately matures, or both. But such extension will in no event exceed the number of days which elapsed between execution and initial disbursement of the loan proceeds or any portion thereof.

Notwithstanding the foregoing, if (i) there shall occur an "Event of Default" under the Security Agreement described below (as such term is defined in the Security Agreement) or (ii) the Maturity Date shall occur, or (iii) any sum shall not be paid when it is due hereunder, then from and after any such occurrence or nonpayment the undersigned shall pay interest to the Lender, on demand, on the entire principal amount then outstanding hereunder and/or under the Security Agreement at the highest rate permitted by law.

Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed. Under no circumstances shall the undersigned be charged more than the highest rate of interest which lawfully may be charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby.

It is, therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceed the highest lawful rate, only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance thereof.

In the event that any payment due hereunder shall not be received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender.

This Note is a promissory note and is secured by a Security Agreement of even date herewith between the undersigned and the Lender (the "Security Agreement") affecting property more particularly described therein, and all of the covenants, conditions and agreements contained in the Security Agreement are by this reference incorporated herein and made a part hereof. At the option of the holder of this Note and upon the terms and conditions provided in the Security Agreement, upon (a) a default in making any payment of principal and interest hereunder when due and payable, and such default continuing beyond the applicable grace period, if any, or (b) the occurrence of an Event of Default (as such term is defined in the Security Agreement), the unpaid principal balance hereof and all accrued interest shall become immediately due and payable. In enforcing its rights under this Note and under such Security Agreement and other instruments delivered in connection with the loan represented hereby, the holder shall have the right and option to pursue its remedies with respect to this Note or to enforce the provisions of the Security Agreement or such other instruments, or any combination thereof, and either simultaneously or in such order as the holder shall deem in its best interest.

The undersigned, and all persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, whether suit be brought or not.

This Note may be prepaid in whole or in part at any time, provided that (i) the undersigned give the Lender written notice of the prepayment at least thirty (30) days but not more than forty-five (45) days prior to such prepayment, which notice shall expressly set forth the date such prepayment is to be made (the "Noticed Prepayment Date"); (ii) all accrued interest has been paid to the date of such prepayment; (iii) the undersigned pay to the Lender a prepayment fee equal to an additional ninety (90) days' interest at the rate herein set forth on the amount of the principal being repaid; and (iv) if the prepayment is not made on the Noticed Prepayment Date, the undersigned shall provide the Lender with an additional thirty (30) days' prior written notice and designate a new Noticed Prepayment Date. This fee shall not apply if the loan is pre-paid after the 1st 12 months of the original or modified loan term. If this Note is prepaid in part, then any such payments shall be applied against the payments due hereunder in inverse order of maturity.

2

If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of New York), such required payment shall be due and payable on the immediately succeeding business day.

Notwithstanding any and all prepayment and other applicable penalties sent forth herein and in the other documents relating to this loan, if during the term of this Loan, and for a period of ninety (90) days thereafter, the borrower receives a solicited or unsolicited bona fide offer from a third party to provide Borrower with funds for the purpose of the repayment, in whole or in part, of this Loan, and Borrower wishes to accept such replacement financing, Borrower shall first provide to Lender the actual written evidence of such financing terms being offered by the third party. Lender shall have ten (10) business days from the receipt thereof to exercise the right "but not the obligation" to provide such financing to the Borrower at the terms set forth in the third party term sheet (which shall not be inclusive of any and all prepayment or other penalties set forth herein and in the other documents relating to this Loan that Borrower will remain fully responsible for), and Borrower shall enter into a Loan modification agreement with Lender setting forth such new loan terms. If Lender fails to so elect within ten (10) business days, Borrower shall be permitted to accept the third party offer and repay all or part of the loan, in which case any and all prepayment and other applicable penalties shall be applied.

At any time during the term of this loan, Lender may require the Borrower to establish an automatic payment account, i.e., Electronic Funds Transfer, for the purpose of making loan payments in lieu of a voucher or check writing system. Within five (5) days of Lender giving the Borrower notice of such requirement, Borrower shall immediately furnish all information and authorizations that Lender requires to establish such automatic debit collection system, including but not limited to any and all checking accounts, bank accounts, and authorization required by the financial institution selected to establish such automatic payment and debit system. Borrower agrees that in the event Lender establishes such automatic payment account, Borrower will maintain a sufficient balance in such account to ensure that funds are available for making the loan payments to Lender on the respective due dates of such payments. The automatic debit will take place five (5) days after the stated due date. In the event that an automatic debit is returned by the Borrower's bank for any reason whatsoever, the account will be charged a $50.00 fee. The failure of Borrower to establish such automatic account and/or to furnish any other item requested by Lender for the purpose of establishing such account, and/or the failure of the Borrower to maintain a sufficient amount of funds in such account to insure that sufficient funds are available in such account to pay the loan payments as they become due, shall constitute an event of default by borrower under this Loan Agreement, the Promissory Note, and Security Agreement of even date giving Lender any and all such rights as the Lender may have in the event of a borrower's default.

Any payment of the principal balance of this Note after the Lender shall have declared the unpaid principal balance hereof and all accrued interest immediately due and payable in accordance with the provisions of this Note or the Security Agreement shall be deemed to be a voluntary prepayment for all purposes hereof, and a prepayment fee calculated pursuant to the provisions of the immediately preceding paragraph shall be payable with respect thereto.

This Note shall be governed by and interpreted in accordance with the laws of the State of Illinois.

**Lincolnshire Service Crop.**

By: _____
    **Laurentiu Ionescu - President and Secretary**

**Lincolnshire Service II, Corp.**

By: _____
    **Laurentiu Ionescu - President and Secretary**

3

STATE OF ILLINOIS)
        : ss.:
COUNTY OF COOK )

On the <u>19th</u> day of <u>March, 2014</u>, before me personally came <u>Laurentiu Ionescu</u>, to me known, who, being by me duly sworn, did depose and say that he/she resides at <u>2175 Chruchill Lane,  Highland Park, IL 60035</u>; that he/she is the **President and Secretary** of <u>**Lincolnshire Service Corp. and Lincolnshire Service II, Corp.**</u>, the corporations described in and which executed the foregoing instrument; and that he/she signed his/her name thereto by order of the board of directors of said corporations.

_____
Notary Public

OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015

4

# EXHIBIT 11

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 06

Lincolnshire Service Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 13

Lincolnshire Service II, Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

Re:     **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service Corp. and Lincolnshire Service II, Corp. (together with Lincolnshire Service Corp., collectively, jointly and severally, the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, (i) that certain Promissory Note dated as of  March 19, 2014 made by the Borrower payable to the Lender in the original principal amount of $2,590,000.00 (as modified and in effect, the "**Note**") and (ii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender and the Borrower, among others (together with the Note and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that one or more events of default have occurred as a result of the Borrower's failure to repay all outstanding amounts owed to the Lender under the Loan Documents upon maturity (the "**Stated Event of Default**").  As a result thereof, all amounts owed to Lender under the Loan Documents are due and payable in full, and the Lender hereby makes **DEMAND** upon the Borrower for repayment in full of all amounts owed by Borrower under the Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, as a result of the Stated Event of Default, interest on the outstanding principal balance of the Note is accruing and shall continue to accrue at the applicable default rate of interest set forth in the Note.

July 6, 2018
Page 2

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Borrower, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Note or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on the Borrower's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Note and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:     Mr. Tom Katsigiannis (by email)
        Mr. Anthony Hood (by email)
        Mr. Frank Natoli (by email)
        Douglas K. Clarke, Esq. (by email)

2325634.1

# EXHIBIT 12

## GUARANTY

Medallion # 75TX, 134TX, 204TX, 640TX, 796TX, 819TX, 894TX, 999TX, 1319TX, 1988TX, 3735TX, 4225TX, 4303TX, 2888TX

In consideration of financial accommodations given or to be given or continued to **Lincolnshire Service Corp. and Lincolnshire Service II, Corp.** (the "Borrower"), by Medallion Bank (the "Lender"), the undersigned as primary obligor and not merely as a surety irrevocably and unconditionally guarantees to the Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities.

The term "liabilities of the Borrower" shall include duties, debts, liabilities and obligations of the Borrower (or its successors, assigns or legal representatives) to the Lender, present or future, whether now or hereafter existing, contingent or absolute, howsoever arising or incurred or evidenced, including, without limitation, the duties, debts, liabilities and obligations of the Borrower under a certain Security Agreement dated **March 19, 2014** between the Borrower and the Lender and under a certain Promissory Note of even date herewith given by the Borrower to the Lender and evidencing a debt in the sum of $2,590,000.00.

The undersigned waives notice of acceptance of this guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking other action by the Lender against, and any other notice to, any party liable thereon (including the undersigned).

The Lender may at any time and from time to time (whether or not after revocation or termination of this guaranty) without the consent of or (except as shall be required by applicable statute and cannot be waived) notice to the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part:

(1) change the manner, place or terms of payment, and/or change or extend the time of payment of, renew or alter, any liability of the Borrower, any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the liabilities of the Borrower as so changed, extended, renewed or altered;

(2) sell, exchange, release, surrender, realize upon or otherwise deal with any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting;

(4) settle or compromise any liability hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Lender and the undersigned; and

(5) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Borrower to the Lender regardless of what liability or liabilities of the Borrower remain unpaid.

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned.

This guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. As to each of the undersigned, this guaranty shall continue until written notice of revocation signed by such undersigned, or until written notice of the death of such undersigned shall in each case have been actually received by the Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause of, any one or more of the remainder of the undersigned, or of the Borrower or of anyone liable in any manner for the liabilities hereby guaranteed or of the liabilities (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase or change in personnel of any one or more of the undersigned which may be a partnership. No revocation or termination hereof shall affect in any manner rights arising under this guaranty with respect to (a) liabilities that shall have been created, contracted, assumed or incurred prior to receipt by the Lender of written notice of such revocation or termination or (b) liabilities which shall have been created, contracted, assumed or incurred after receipt of such written notice pursuant to any contract entered into by the Lender prior to receipt of such notice; and the sole effect of revocation or termination hereof shall be to exclude from this guaranty liabilities thereafter arising that are unconnected with liabilities therefore arising or transactions theretofore entered into.

All notices provided to be given to the Lender herein shall be sent by registered, certified mail, or federal express, return receipt requested.

Any and all rights and claims of the undersigned against the Borrower or any of its property, arising by reason of any payment by the undersigned to the Lender pursuant to the provisions of this guaranty, shall be subordinate and subject in right of payment to the prior payment in full of all liabilities of the Borrower to the Lender.

The happening of any of the following events shall constitute an "Event of Default" under this guaranty:

(a) any default with respect to payment or performance of the liabilities of the Borrower;

(b) any failure to perform and/or breach by the undersigned of any of the terms, covenants and conditions of this guaranty or the Pledge Agreement between the undersigned and the Lender of even date herewith or any other document or instrument delivered in connection herewith and securing the performance hereof by any of the undersigned;

(c) the death or insolvency (however evidenced) of the Borrower or any person (including the undersigned) who is liable directly or indirectly in respect of any of the liabilities of the Borrower;

(d) any change in the financial condition of the Borrower or any aforesaid person that the Lender, in its sole discretion, deems to be adverse;

(e) the suspension of business of the Borrower or any aforesaid person;

(f) the issuance of any warrant, process or order of attachment, garnishment or other lien and/or the filing of a lien as a result thereof against any of the property of the Borrower or any aforesaid person;

(g) the Borrower or any aforesaid person makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any aforesaid person or for any property of any of them, or any proceeding is commenced by or against the Borrower or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute;

(h) it appears that any representation in any financial or other statement of the Borrower or any aforesaid person, delivered to the Lender by or on behalf of the Borrower or such person, is untrue or incomplete.

Upon the occurrence of an Event of Default, and at any time thereafter, the Lender may, without notice to the Borrower or any aforesaid person, make the liabilities of the Borrower to the Lender, whether or not then due, immediately due from and payable hereunder by the undersigned, and the Lender shall be entitled to enforce the obligations of the undersigned hereunder.

If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the liabilities of the Borrower and the Lender repays all or part of said amount of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of the Borrower, and the undersigned shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by the Borrower or others (including the undersigned), with respect to any of the liabilities of the Borrower shall, if the statute of limitations in favor of the undersigned against the Lender shall have commenced to run, toll the running of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

The undersigned shall pay to the Lender all costs and expenses, including filing fees and attorneys' fees, incurred by the Lender in connection with the custody, care, preservation or collection of any of the property of the undersigned or in seeking to enforce any of the liabilities or obligations of the undersigned hereunder.

The Lender shall have the right, at any time and from time to time, without notice, to sell, assign, transfer or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of such rights shall have the right to enforce this guaranty, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were by name specifically given such right. The Lender shall have an unimpaired right to enforce this guaranty for its benefit to that portion of the rights hereunder that were not sold, assigned, transferred or otherwise disposed of.

No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the undersigned to the Lender in any other respect at any other time.

The undersigned waives the right of trial by jury in the event of any litigation between the parties hereto in respect of any matter arising under this guaranty and agrees that, should the Lender bring any judicial proceedings in relation to any such matter, the undersigned will not interpose any counterclaim or setoff of any nature.

This guaranty and the rights and obligations of the Lender and of the undersigned hereunder shall be deemed to be a contract made under and shall be governed and construed in accordance with the laws of the State of Illinois, and this guaranty is binding upon the undersigned, his, their, or its executors, administrators, successors or assigns, and shall inure to the benefit of the Lender, its successors or assigns. In the event that the Lender brings any action or suit in any court of record of the State of Illinois or of the United States to enforce any or all liabilities of the undersigned hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address below set forth.

In case one or more of the provisions contained in this guaranty shall be or shall be deemed to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

The rights, remedies, powers and privileges of the Lender hereunder are cumulative and not conclusive of any other rights, remedies, powers or privileges now or hereafter existing at law or in equity.

STATE OF ILLINOIS)
: ss.:
COUNTY OF COOK)

On the **19th** day of **March, 2014**, before me personally came <u>Laurentiu Ionescu</u>, President and Secretary, Individual Guarantor, to me known to be the individual(s) described in and which executed the foregoing instrument; and that he/she acknowledged that he/she executed the same.

_____
Notary Public

OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/26/2015

8

This guaranty may be signed in any number of counterparts with the same effect as if the signatures thereto and hereof were upon the same instrument.

The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. Anyone signing this guaranty shall be bound hereby, whether or not anyone else signs this guaranty at any time. The term "Lender" includes any agent of the Lender acting for it.

This Agreement is secured by a Pledge Agreement dated of even date herewith between the undersigned and the Lender.

Dated: March 19,2014 _____

Dated: March 19, 2014 _____




_____
Lincolnshire Service Corp.
By: Laurentiu Ionescu –President & Secretary

_____
Laurentiu Ionescu – Individual Gurantor

_____
Lincolnshire Service II, Corp.
By: Laurentiu Ionescu – President& Secretary

Address: 3351 W. Addison Street, Chicago, IL 60618

Address: 2175 Churchill Lane, Higland Park, IL 60035

Lincolnshire Service Corp.
Lincolnshire Service II, Corp.

# EXHIBIT 13

# RIEMER ┃ BRAUNSTEIN

Phillip J. Block
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7528 20

Mr. Laurentiu Ionescu
2175 Churchill Lane
Highland Park, Illinois 60035

Re:     **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service Corp. and Lincolnshire Service II, Corp. (together with Lincolnshire Service Corp., collectively, jointly and severally, the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, the following: (i) that certain Promissory Note dated as of March 19, 2014 made by the Borrower payable to the Lender in the original principal amount of $2,590,000.00 (as modified and in effect, the "**Note**"); (ii) that certain Guaranty dated as of March 19, 2014 and executed by you, Laurentiu Ionescu (the "**Guarantor**"), in favor of the Lender (the "**Guaranty**"); and (iii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender, the Borrower and the Guarantor, among others (together with the Note, the Guaranty and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that the Borrower is in default of its obligations to the Lender.  Accordingly, as a result of the foregoing, and in accordance with the terms and conditions of the Guaranty, the Lender hereby makes **DEMAND** upon you, the Guarantor, for the immediate payment in full of all amounts due under the Guaranty and other Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Guarantor, except as may be required by law.  However, any failure or delay by the Lender in exercising any of its rights under the Guaranty or any other Loan Documents in this matter shall not constitute or be

July 6, 2018
Page 2

deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Guaranty or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note, the Guaranty, or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Guaranty and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:     Mr. Tom Katsigiannis (by email)
        Mr. Anthony Hood (by email)
        Mr. Frank Natoli (by email)
        Douglas K. Clarke, Esq. (by email)

2325638.1

# EXHIBIT 14

**Medallion Bank**

<u>**PROMISSORY NOTE**</u>

Medallion # 1377TX, 6357TX, 6457TX,
1139TX, 2876TX, 5938TX

$1,168,200.00                                                                                  March 19, 2014

FOR VALUE RECEIVED, the undersigned, IL 1, Corp. and IL 2, Corp. (the "Borrower"), located at 3351 W. Addison Street, Chicago, IL 60618, promises to pay to the order of Medallion Bank (the "Lender"), in lawful money of the United States, at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **One Million One Hundred Sixty-Eight Thousand Two Hundred Dollars ($1,168,200.00)**, with interest thereon to be computed and paid from the date of this Note until **March 19, 2018** (the "Maturity Date"), at the rate of **4 and 75/100 percent (4.75%)** per annum except as set forth below, in constant monthly installments of **$9,129.68**, commencing on **April 19, 2014**, and on the **19th** day of each month thereafter until the Maturity Date, at which time all unpaid principal balance and accrued interest shall be due and payable. All payments, including but not limited to, monthly installment payments, shall be applied first to any outstanding charges, fees, costs or expenses incurred, then to accrued interest, and then to the outstanding principal.

If the execution of this note and the disbursement of funds there from do not occur simultaneously, then Lender may elect, in its sole untrammeled discretion, to extend: (1) the initial date upon which interest begins to accrue, or (2) the date upon which the loan ultimately matures, or both. But such extension will in no event exceed the number of days which elapsed between execution and initial disbursement of the loan proceeds or any portion thereof.

Notwithstanding the foregoing, if (i) there shall occur an "Event of Default" under the Security Agreement described below (as such term is defined in the Security Agreement) or (ii) the Maturity Date shall occur, or (iii) any sum shall not be paid when it is due hereunder, then from and after any such occurrence or nonpayment the undersigned shall pay interest to the Lender, on demand, on the entire principal amount then outstanding hereunder and/or under the Security Agreement at the highest rate permitted by law.

Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed. Under no circumstances shall the undersigned be charged more than the highest rate of interest which lawfully may be charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby.

It is, therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceed the highest lawful rate, only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance thereof.

In the event that any payment due hereunder shall not be received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender.

This Note is a promissory note and is secured by a Security Agreement of even date herewith between the undersigned and the Lender (the "Security Agreement") affecting property more particularly described therein, and all of the covenants, conditions and agreements contained in the Security Agreement are by this reference incorporated herein and made a part hereof. At the option of the holder of this Note and upon the terms and conditions provided in the Security Agreement, upon (a) a default in making any payment of principal and interest hereunder when due and payable, and such default continuing beyond the applicable grace period, if any, or (b) the occurrence of an Event of Default (as such term is defined in the Security Agreement), the unpaid principal balance hereof and all accrued interest shall become immediately due and payable. In enforcing its rights under this Note and under such Security Agreement and other instruments delivered in connection with the loan represented hereby, the holder shall have the right and option to pursue its remedies with respect to this Note or to enforce the provisions of the Security Agreement or such other instruments, or any combination thereof, and either simultaneously or in such order as the holder shall deem in its best interest.

The undersigned, and all persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, whether suit be brought or not.

This Note may be prepaid in whole or in part at any time, provided that (i) the undersigned give the Lender written notice of the prepayment at least thirty (30) days but not more than forty-five (45) days prior to such prepayment, which notice shall expressly set forth the date such prepayment is to be made (the "Noticed Prepayment Date"); (ii) all accrued interest has been paid to the date of such prepayment; (iii) the undersigned pay to the Lender a prepayment fee equal to an additional ninety (90 days) days' interest at the rate herein set forth on the amount of the principal being repaid; and (iv) if the prepayment is not made on the Noticed Prepayment Date, the undersigned shall provide the Lender with an additional thirty (30) days' prior written notice and designate a new Noticed Prepayment Date. This fee shall not apply if the loan is pre-paid after the 1st 12 months of the original or modified loan term. If this Note is prepaid in part, then any such payments shall be applied against the payments due hereunder in inverse order of maturity.

If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a

2

Saturday, Sunday or legal holiday observed in the State of New York), such required payment shall be due and payable on the immediately succeeding business day.

Notwithstanding any and all prepayment and other applicable penalties sent forth herein and in the other documents relating to this loan, if during the term of this Loan, and for a period of ninety (90) days thereafter, the borrower receives a solicited or unsolicited bona fide offer from a third party to provide Borrower with funds for the purpose of the repayment, in whole or in part, of this Loan, and Borrower wishes to accept such replacement financing, Borrower shall first provide to Lender the actual written evidence of such financing terms being offered by the third party. Lender shall have ten (10) business days from the receipt thereof to exercise the right "but not the obligation" to provide such financing to the Borrower at the terms set forth in the third party term sheet (which shall not be inclusive of any and all prepayment or other penalties set forth herein and in the other documents relating to this Loan that Borrower will remain fully responsible for), and Borrower shall enter into a Loan modification agreement with Lender setting forth such new loan terms. If Lender fails to so elect within ten (10) business days, Borrower shall be permitted to accept the third party offer and repay all or part of the loan, in which case any and all prepayment and other applicable penalties shall be applied.

At any time during the term of this loan, Lender may require the Borrower to establish an automatic payment account, i.e., Electronic Funds Transfer, for the purpose of making loan payments in lieu of a voucher or check writing system. Within five (5) days of Lender giving the Borrower notice of such requirement, Borrower shall immediately furnish all information and authorizations that Lender requires to establish such automatic debit collection system, including but not limited to any and all checking accounts, bank accounts, and authorization required by the financial institution selected to establish such automatic payment and debit system. Borrower agrees that in the event Lender establishes such automatic payment account, Borrower will maintain a sufficient balance in such account to ensure that funds are available for making the loan payments to Lender on the respective due dates of such payments. The automatic debit will take place five (5) days after the stated due date. In the event that an automatic debit is returned by the Borrower's bank for any reason whatsoever, the account will be charged a $50.00 fee. The failure of Borrower to establish such automatic account and/or to furnish any other item requested by Lender for the purpose of establishing such account, and/or the failure of the Borrower to maintain a sufficient amount of funds in such account to insure that sufficient funds are available in such account to pay the loan payments as they become due, shall constitute an event of default by borrower under this Loan Agreement, the Promissory Note, and Security Agreement of even date giving Lender any and all such rights as the Lender may have in the event of a borrower's default.

Any payment of the principal balance of this Note after the Lender shall have declared the unpaid principal balance hereof and all accrued interest immediately due and payable in accordance with the provisions of this Note or the Security Agreement shall be deemed to be a voluntary prepayment for all purposes hereof, and a prepayment fee calculated pursuant to the provisions of the immediately preceding paragraph shall be payable with respect thereto.

This Note shall be governed by and interpreted in accordance with the laws of the State of Illinois.

IL 1, Corp.

By: _____
Laurentiu Ionescu - President and Secretary

IL 2, Corp.

By: _____
Laurentiu Ionescu - President and Secretary

STATE OF ILLINOIS)
          : ss.:
COUNTY OF COOK )


     On the **19th** day of **March, 2014**, before me personally came **Laurentiu Ionescu**, to me known, who, being by me duly sworn, did depose and say that he/she resides at **2175 Chruchill Lane,  Highland Park, IL 60035**; that he/she is the **President and Secretary** of **IL 1, Corp. and IL 2, Corp.**, the corporations described in and which executed the foregoing instrument; and that he/she signed his/her name thereto by order of the board of directors of said corporations.


_____
          Notary Public

OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015

4

# EXHIBIT 15

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7527 83

IL 1, Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7527 90

IL 2, Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

Re:     **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and IL 1, Corp. and IL 2, Corp. (together with IL 1, Corp., collectively, jointly and severally, the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, (i) that certain Promissory Note dated as of  March 19, 2014 made by the Borrower payable to the Lender in the original principal amount of $1,168,200.00 (as modified and in effect, the "**Note**") and (ii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender and the Borrower, among others (together with the Note and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that one or more events of default have occurred as a result of the Borrower's failure to repay all outstanding amounts owed to the Lender under the Loan Documents upon maturity (the "**Stated Event of Default**").  As a result thereof, all amounts owed to Lender under the Loan Documents are due and payable in full, and the Lender hereby makes **DEMAND** upon the Borrower for repayment in full of all amounts owed by Borrower under the Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, as a result of the Stated Event of Default, interest on the outstanding principal balance of the Note is accruing and shall continue to accrue at the applicable default rate of interest set forth in the Note.

July 6, 2018
Page 2

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Borrower, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Note or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on the Borrower's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Note and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:    Mr. Tom Katsigiannis (by email)
       Mr. Anthony Hood (by email)
       Mr. Frank Natoli (by email)
       Douglas K. Clarke, Esq. (by email)

2325925.1

# EXHIBIT 16

## **GUARANTY**

Medallion # 1377TX, 6357TX, 6457TX,
1139TX, 2876TX, 5938TX

In consideration of financial accommodations given or to be given or continued to **IL 1, Corp. and IL 2, Corp.** (the "Borrower"), by Medallion Bank (the "Lender"), the undersigned as primary obligor and not merely as a surety irrevocably and unconditionally guarantees to the Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities.

The term "liabilities of the Borrower" shall include duties, debts, liabilities and obligations of the Borrower (or its successors, assigns or legal representatives) to the Lender, present or future, whether now or hereafter existing, contingent or absolute, howsoever arising or incurred or evidenced, including, without limitation, the duties, debts, liabilities and obligations of the Borrower under a certain Security Agreement dated **March 19, 2014** between the Borrower and the Lender and under a certain Promissory Note of even date herewith given by the Borrower to the Lender and evidencing a debt in the sum of $1,168,200.00.

The undersigned waives notice of acceptance of this guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking other action by the Lender against, and any other notice to, any party liable thereon (including the undersigned).

The Lender may at any time and from time to time (whether or not after revocation or termination of this guaranty) without the consent of or (except as shall be required by applicable statute and cannot be waived) notice to the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part:

(1) change the manner, place or terms of payment, and/or change or extend the time of payment of, renew or alter, any liability of the Borrower, any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the liabilities of the Borrower as so changed, extended, renewed or altered;

(2) sell, exchange, release, surrender, realize upon or otherwise deal with any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting;

(4) settle or compromise any liability hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Lender and the undersigned; and

(5) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Borrower to the Lender regardless of what liability or liabilities of the Borrower remain unpaid.

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned.

This guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. As to each of the undersigned, this guaranty shall continue until written notice of revocation signed by such undersigned, or until written notice of the death of such undersigned shall in each case have been actually received by the Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause of, any one or more of the remainder of the undersigned, or of the Borrower or of anyone liable in any manner for the liabilities hereby guaranteed or of the liabilities (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase or change in personnel of any one or more of the undersigned which may be a partnership. No revocation or termination hereof shall affect in any manner rights arising under this guaranty with respect to (a) liabilities that shall have been created, contracted, assumed or incurred prior to receipt by the Lender of written notice of such revocation or termination or (b) liabilities which shall have been created, contracted, assumed or incurred after receipt of such written notice pursuant to any contract entered into by the Lender prior to receipt of such notice; and the sole effect of revocation or termination hereof shall be to exclude from this guaranty liabilities thereafter arising that are unconnected with liabilities therefore arising or transactions theretofore entered into.

All notices provided to be given to the Lender herein shall be sent by registered, certified mail, or federal express, return receipt requested.

Any and all rights and claims of the undersigned against the Borrower or any of its property, arising by reason of any payment by the undersigned to the Lender pursuant to the provisions of this guaranty, shall be subordinate and subject in right of payment to the prior payment in full of all liabilities of the Borrower to the Lender.

The happening of any of the following events shall constitute an "Event of Default" under this guaranty:

(a) any default with respect to payment or performance of the liabilities of the Borrower;

(b) any failure to perform and/or breach by the undersigned of any of the terms, covenants and conditions of this guaranty or the Pledge Agreement between the undersigned and the Lender of even date herewith or any other document or instrument delivered in connection herewith and securing the performance hereof by any of the undersigned;

(c) the death or insolvency (however evidenced) of the Borrower or any person (including the undersigned) who is liable directly or indirectly in respect of any of the liabilities of the Borrower;

(d) any change in the financial condition of the Borrower or any aforesaid person that the Lender, in its sole discretion, deems to be adverse;

(e) the suspension of business of the Borrower or any aforesaid person;

(f) the issuance of any warrant, process or order of attachment, garnishment or other lien and/or the filing of a lien as a result thereof against any of the property of the Borrower or any aforesaid person;

(g) the Borrower or any aforesaid person makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any aforesaid person or for any property of any of them, or any proceeding is commenced by or against the Borrower or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute;

(h) it appears that any representation in any financial or other statement of the Borrower or any aforesaid person, delivered to the Lender by or on behalf of the Borrower or such person, is untrue or incomplete.

Upon the occurrence of an Event of Default, and at any time thereafter, the Lender may, without notice to the Borrower or any aforesaid person, make the liabilities of the Borrower to the Lender, whether or not then due, immediately due from and payable hereunder by the undersigned, and the Lender shall be entitled to enforce the obligations of the undersigned hereunder.

If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the liabilities of the Borrower and the Lender repays all or part of said amount of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of the Borrower, and the undersigned shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by the Borrower or others (including the undersigned), with respect to any of the liabilities of the Borrower shall, if the statute of limitations in favor of the undersigned against the Lender shall have commenced to run, toll the running of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

The undersigned shall pay to the Lender all costs and expenses, including filing fees and attorneys' fees, incurred by the Lender in connection with the custody, care, preservation or collection of any of the property of the undersigned or in seeking to enforce any of the liabilities or obligations of the undersigned hereunder.

The Lender shall have the right, at any time and from time to time, without notice, to sell, assign, transfer or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of such rights shall have the right to enforce this guaranty, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were by name specifically given such right. The Lender shall have an unimpaired right to enforce this guaranty for its benefit to that portion of the rights hereunder that were not sold, assigned, transferred or otherwise disposed of.

No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the undersigned to the Lender in any other respect at any other time.

The undersigned waives the right of trial by jury in the event of any litigation between the parties hereto in respect of any matter arising under this guaranty and agrees that, should the Lender bring any judicial proceedings in relation to any such matter, the undersigned will not interpose any counterclaim or setoff of any nature.

This guaranty and the rights and obligations of the Lender and of the undersigned hereunder shall be deemed to be a contract made under and shall be governed and construed in accordance with the laws of the State of Illinois, and this guaranty is binding upon the undersigned, his, their, or its executors, administrators, successors or assigns, and shall inure to the benefit of the Lender, its successors or assigns. In the event that the Lender brings any action or suit in any court of record of the State of Illinois or of the United States to enforce any or all liabilities of the undersigned hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address below set forth.

In case one or more of the provisions contained in this guaranty shall be or shall be deemed to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

The rights, remedies, powers and privileges of the Lender hereunder are cumulative and not conclusive of any other rights, remedies, powers or privileges now or hereafter existing at law or in equity.

This guaranty may be signed in any number of counterparts with the same effect as if the signatures thereto and hereof were upon the same instrument.

The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them. Anyone signing this guaranty shall be bound hereby, whether or not anyone else signs this guaranty at any time. The term "Lender" includes any agent of the Lender acting for it.

This Agreement is secured by a Pledge Agreement dated of even date herewith between the undersigned and the Lender.

Dated: March 19,2014

Dated: March 19, 2014

IL 1, Corp.
By: Laurentiu Ionescu – President & Secretary

Laurentiu Ionescu – Individual Gurantor

IL 2, Corp.
By: Laurentiu Ionescu – President & Secretary

Address: 3351 W. Addison Street, Chicago, IL 60618

Address: 2175 Churchill Lane, Higland Park, IL 60035

IL 1, Corp.
IL 2, Corp.

7

STATE OF ILLINOIS)
          : ss.:
COUNTY OF COOK)


On the **19th** day of **March, 2014**, before me personally came <u>Laurentiu Ionescu</u>, President and Secretary, Individual Guarantor, to me known to be the individual(s) described in and which executed the foregoing instrument; and that he/she acknowledged that he/she executed the same.

_____
          Notary Public

OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015

# EXHIBIT 17

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7527 76

Mr. Laurentiu Ionescu
2175 Churchill Lane
Highland Park, Illinois 60035

> Re:  **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and IL 1, Corp. and IL 2, Corp. (together with IL 1, Corp., collectively, jointly and severally, the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, the following:  (i) that certain Promissory Note dated as of March 19, 2014 made by the Borrower payable to the Lender in the original principal amount of $1,168,200.00 (as modified and in effect, the "**Note**"); (ii) that certain Guaranty dated as of March 19, 2014 and executed by you, Laurentiu Ionescu (the "**Guarantor**"), in favor of the Lender (the "**Guaranty**"); and (iii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender, the Borrower and the Guarantor, among others (together with the Note, the Guaranty and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that the Borrower is in default of its obligations to the Lender.  Accordingly, as a result of the foregoing, and in accordance with the terms and conditions of the Guaranty, the Lender hereby makes **DEMAND** upon you, the Guarantor, for the immediate payment in full of all amounts due under the Guaranty and other Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Guarantor, except as may be required by law.  However, any failure or delay by the Lender in exercising any of its rights under the Guaranty or any other Loan Documents in this matter shall not constitute or be

July 6, 2018
Page 2

deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Guaranty or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note, the Guaranty, or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Guaranty and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:    Mr. Tom Katsigiannis (by email)
       Mr. Anthony Hood (by email)
       Mr. Frank Natoli (by email)
       Douglas K. Clarke, Esq. (by email)

2325930.1

# EXHIBIT 18

**Medallion Bank**

**<u>PROMISSORY NOTE</u>**

Medallion # 1565TX, 5506TX
July 9, 2014

$200,000.00

FOR VALUE RECEIVED, the undersigned, Lincolnshire Service Corp. (the "Borrower"), located at 3351 W. Addison Street, Chicago, IL 60618, promises to pay to the order of Medallion Bank (the "Lender"), in lawful money of the United States, at 1100 East 6600 South, Suite 510, Salt Lake City, UT 84121, or at such other place as may be designated in writing by the holder of this Note, the principal sum of **Two Hundred Thousand Dollars ($200,000.00)**, with interest thereon to be computed and paid from the date of this Note until **July 9, 2018** (the "Maturity Date"), at the rate of **four and 90/100 percent (4.90%)** per annum except as set forth below, in constant monthly installments of **$1,847.01**, commencing on <u>August 9, 2014</u>, and on the <u>9th</u> day of each month thereafter until the Maturity Date, at which time all unpaid principal balance and accrued interest shall be due and payable. All payments, including but not limited to, monthly installment payments, shall be applied first to any outstanding charges, fees, costs or expenses incurred, then to accrued interest, and then to the outstanding principal.

If the execution of this note and the disbursement of funds there from do not occur simultaneously, then Lender may elect, in its sole untrammeled discretion, to extend: (1) the initial date upon which interest begins to accrue, or (2) the date upon which the loan ultimately matures, or both. But such extension will in no event exceed the number of days which elapsed between execution and initial disbursement of the loan proceeds or any portion thereof.

Notwithstanding the foregoing, if (i) there shall occur an "Event of Default" under the Security Agreement described below (as such term is defined in the Security Agreement) or (ii) the Maturity Date shall occur, or (iii) any sum shall not be paid when it is due hereunder, then from and after any such occurrence or nonpayment the undersigned shall pay interest to the Lender, on demand, on the entire principal amount then outstanding hereunder and/or under the Security Agreement at the highest rate permitted by law.

Interest shall be computed on the basis of a 360-day year for the actual number of days elapsed. Under no circumstances shall the undersigned be charged more than the highest rate of interest which lawfully may be charged by the holder hereof and paid by the undersigned on the indebtedness evidenced hereby.

It is, therefore, agreed that if at any time interest on the indebtedness evidenced hereby would otherwise exceed the highest lawful rate, only such highest lawful rate will be paid by the undersigned. Should any amount be paid by the undersigned in excess of such highest lawful amount, such excess shall be deemed to have been paid in reduction of the principal balance thereof.

In the event that any payment due hereunder shall not be received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender.

This Note is a promissory note and is secured by a Security Agreement of even date herewith between the undersigned and the Lender (the "Security Agreement") affecting property more particularly described therein, and all of the covenants, conditions and agreements contained in the Security Agreement are by this reference incorporated herein and made a part hereof. At the option of the holder of this Note and upon the terms and conditions provided in the Security Agreement, upon (a) a default in making any payment of principal and interest hereunder when due and payable, and such default continuing beyond the applicable grace period, if any, or (b) the occurrence of an Event of Default (as such term is defined in the Security Agreement), the unpaid principal balance hereof and all accrued interest shall become immediately due and payable. In enforcing its rights under this Note and under such Security Agreement and other instruments delivered in connection with the loan represented hereby, the holder shall have the right and option to pursue its remedies with respect to this Note or to enforce the provisions of the Security Agreement or such other instruments, or any combination thereof, and either simultaneously or in such order as the holder shall deem in its best interest.

The undersigned, and all persons liable or to become liable on this Note, agree, jointly and severally, to pay all costs of collection, including reasonable attorneys' fees and disbursements, in case the unpaid principal balance of this Note, or any payment of principal and/or interest thereon, is not paid when due, or in case it becomes necessary to protect the security for the indebtedness evidenced hereby, whether suit be brought or not.

This Note may be prepaid in whole or in part at any time, provided that (i) the undersigned give the Lender written notice of the prepayment at least thirty (30) days but not more than forty-five (45) days prior to such prepayment, which notice shall expressly set forth the date such prepayment is to be made (the "Noticed Prepayment Date"); (ii) all accrued interest has been paid to the date of such prepayment; (iii) the undersigned pay to the Lender a prepayment fee equal to an additional ninety (90) days' interest at the rate herein set forth on the amount of the principal being repaid; and (iv) if the prepayment is not made on the Noticed Prepayment Date, the undersigned shall provide the Lender with an additional thirty (30) days' prior written notice and designate a new Noticed Prepayment Date. This fee shall not apply if the loan is pre-paid after the 1st 12 months of the original or modified loan term. If this Note is prepaid in part, then any such payments shall be applied against the payments due hereunder in inverse order of maturity.

If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of New York), such required payment shall be due and payable on the immediately

2

succeeding business day.

Notwithstanding any and all prepayment and other applicable penalties sent forth herein and in the other documents relating to this loan, if during the term of this Loan, and for a period of ninety (90) days thereafter, the borrower receives a solicited or unsolicited bona fide offer from a third party to provide Borrower with funds for the purpose of the repayment, in whole or in part, of this Loan, and Borrower wishes to accept such replacement financing, Borrower shall first provide to Lender the actual written evidence of such financing terms being offered by the third party. Lender shall have ten (10) business days from the receipt thereof to exercise the right "but not the obligation" to provide such financing to the Borrower at the terms set forth in the third party term sheet (which shall not be inclusive of any and all prepayment or other penalties set forth herein and in the other the documents relating to this Loan that Borrower will remain fully responsible for), and Borrower shall enter into a Loan modification agreement with Lender setting forth such new loan terms. If Lender fails to so elect within ten (10) business days, Borrower shall be permitted to accept the third party offer and repay all or part of the loan, in which case any and all prepayment and other applicable penalties shall be applied.

At any time during the term of this loan, Lender may require the Borrower to establish an automatic payment account, i.e., Electronic Funds Transfer, for the purpose of making loan payments in lieu of a voucher or check writing system. Within five (5) days of Lender giving the Borrower notice of such requirement, Borrower shall immediately furnish all information and authorizations that Lender requires to establish such automatic debit collection system, including but not limited to any and all checking accounts, bank accounts, and authorization required by the financial institution selected to establish such automatic payment and debit system. Borrower agrees that in the event Lender establishes such automatic payment account, Borrower will maintain a sufficient balance in such account to ensure that funds are available for making the loan payments to Lender on the respective due dates of such payments. The automatic debit will take place five (5) days after the stated due date. In the event that an automatic debit is returned by the Borrower's bank for any reason whatsoever, the account will be charged a $50.00 fee. The failure of Borrower to establish such automatic account and/or to furnish any other item requested by Lender for the purpose of establishing such account, and/or the failure of the Borrower to maintain a sufficient amount of funds in such account to insure that sufficient funds are available in such account to pay the loan payments as they become due, shall constitute an event of default by borrower under this Loan Agreement, the Promissory Note, and Security Agreement of even date giving Lender any and all such rights as the Lender may have in the event of a borrower's default.

Any payment of the principal balance of this Note after the Lender shall have declared the unpaid principal balance hereof and all accrued interest immediately due and payable in accordance with the provisions of this Note or the Security Agreement shall be deemed to be a voluntary prepayment for all purposes hereof, and a prepayment fee calculated pursuant to the provisions of the immediately preceding paragraph shall be payable with respect thereto.

This Note shall be governed by and interpreted in accordance with the laws of the State of Illinois.

Lincolnshire Service Corp.

By: _____

Laurentiu Ionescu - President and Secretary

3

STATE OF ILLINOIS)
           : ss.:
COUNTY OF COOK )


On the **9th** day of **July, 2014**, before me personally came <u>Laurentiu Ionescu</u>, to me known, who, being by me duly sworn, did depose and say that he/she resides at **2175 Chruchill Lane, Highland Park, IL 60035**; that he/she is the **President and Secretary** of <u>Lincolnshire Service Corp.</u>, the corporations described in and which executed the foregoing instrument; and that he/she signed his/her name thereto by order of the board of directors of said corporations.

_____
           Notary Public

```
OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015
```

4

# EXHIBIT 19

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173 direct
(312) 780-1212 fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7527 69

Lincolnshire Service Corp.
3351 W. Addison Street
Chicago, Illinois 60618
Attn: Mr. Laurentiu Ionescu

Re:     **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, (i) that certain Promissory Note dated as of July 9, 2014 made by the Borrower payable to the Lender in the original principal amount of $200,000.00 (as modified and in effect, the "**Note**") and (ii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender and the Borrower, among others (together with the Note and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

Please be advised that one or more events of default have occurred as a result of the Borrower's failure to repay all outstanding amounts owed to the Lender under the Loan Documents upon maturity (the "**Stated Event of Default**"). As a result thereof, all amounts owed to Lender under the Loan Documents are due and payable in full, and the Lender hereby makes **DEMAND** upon the Borrower for repayment in full of all amounts owed by Borrower under the Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

Please be further advised that, as a result of the Stated Event of Default, interest on the outstanding principal balance of the Note is accruing and shall continue to accrue at the applicable default rate of interest set forth in the Note.

July 6, 2018
Page 2

Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Borrower, except as may be required by law. However, any failure or delay by the Lender in exercising any of its rights under the Note or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Borrower or on the Borrower's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Note and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:   Mr. Tom Katsigiannis (by email)
      Mr. Anthony Hood (by email)
      Mr. Frank Natoli (by email)
      Douglas K. Clarke, Esq. (by email)

2325940.1

# EXHIBIT 20

**GUARANTY**                                                    Medallion # 1565TX, 5506TX

In consideration of financial accommodations given or to be given or continued to **Lincolnshire Service Corp.** (the "Borrower"), by Medallion Bank (the "Lender"), the undersigned as primary obligor and not merely as a surety irrevocably and unconditionally guarantees to the Lender payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower to the Lender, together with all interest thereon and all attorneys' fees, costs and expenses of collection incurred by the Lender in enforcing any of such liabilities.

The term "liabilities of the Borrower" shall include duties, debts, liabilities and obligations of the Borrower (or its successors, assigns or legal representatives) to the Lender, present or future, whether now or hereafter existing, contingent or absolute, howsoever arising or incurred or evidenced, including, without limitation, the duties, debts, liabilities and obligations of the Borrower under a certain Security Agreement dated **July 9, 2014** between the Borrower and the Lender and under a certain Promissory Note of even date herewith given by the Borrower to the Lender and evidencing a debt in the sum of $200,000.00.

The undersigned waives notice of acceptance of this guaranty and notice of any liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor or nonpayment of any such liabilities, suit or taking other action by the Lender against, and any other notice to, any party liable thereon (including the undersigned).

The Lender may at any time and from time to time (whether or not after revocation or termination of this guaranty) without the consent of or (except as shall be required by applicable statute and cannot be waived) notice to the undersigned, without incurring responsibility to the undersigned, without impairing or releasing the obligations of the undersigned hereunder, upon or without any terms or conditions and in whole or in part:

(1) change the manner, place or terms of payment, and/or change or extend the time of payment of, renew or alter, any liability of the Borrower, any security therefor, or any liability incurred directly or indirectly in respect thereof, and the guaranty herein made shall apply to the liabilities of the Borrower as so changed, extended, renewed or altered;

(2) sell, exchange, release, surrender, realize upon or otherwise deal with any manner and in any order any property by whomsoever at any time pledged or mortgaged to secure, or howsoever securing, the liabilities hereby guaranteed or any liabilities (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or any offset there against;

(3) exercise or refrain from exercising any rights against the Borrower or others (including the undersigned) or otherwise act or refrain from acting;

(4) settle or compromise any liability hereby guaranteed, any security therefor or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liability (whether due or not) of the Borrower to creditors of the Borrower other than the Lender and the undersigned; and

(5) apply any sums by whomsoever paid or howsoever realized to any liability or liabilities of the Borrower to the Lender regardless of what liability or liabilities of the Borrower remain unpaid.

No invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor or any other circumstance that might otherwise constitute a legal or equitable defense of a guarantor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned.

This guaranty is a continuing one and all liabilities to which it applies or may apply under the terms hereof shall be conclusively presumed to have been created in reliance hereon. As to each of the undersigned, this guaranty shall continue until written notice of revocation signed by such undersigned, or until written notice of the death of such undersigned shall in each case have been actually received by the Lender, notwithstanding a revocation by, or the death of, or complete or partial release for any cause of, any one or more of the remainder of the undersigned, or of the Borrower or of anyone liable in any manner for the liabilities hereby guaranteed or of the liabilities (including those hereunder) incurred directly or indirectly in respect thereof or hereof, and notwithstanding the dissolution, termination or increase or change in personnel of any one or more of the undersigned which may be a partnership. No revocation or termination hereof shall affect in any manner rights arising under this guaranty with respect to (a) liabilities that shall have been created, contracted, assumed or incurred prior to receipt by the Lender of written notice of such revocation or termination or (b) liabilities which shall have been created, contracted, assumed or incurred after receipt of such written notice pursuant to any contract entered into by the Lender prior to receipt of such notice; and the sole effect of revocation or termination hereof shall be to exclude from this guaranty liabilities thereafter arising that are unconnected with liabilities therefore arising or transactions theretofore entered into.

All notices provided to be given to the Lender herein shall be sent by registered, certified mail, or federal express, return receipt requested.

Any and all rights and claims of the undersigned against the Borrower or any of its property, arising by reason of any payment by the undersigned to the Lender pursuant to the provisions of this guaranty, shall be subordinate and subject in right of payment to the prior payment in full of all liabilities of the Borrower to the Lender.

The happening of any of the following events shall constitute an "Event of Default" under this guaranty:

(a) any default with respect to payment or performance of the liabilities of the Borrower;

(b) any failure to perform and/or breach by the undersigned of any of the terms, covenants and conditions of this guaranty or the Pledge Agreement between the undersigned and the Lender of even date herewith or any other document or

5

instrument delivered in connection herewith and securing the performance hereof by any of the undersigned;

(c) the death or insolvency (however evidenced) of the Borrower or any person (including the undersigned) who is liable directly or indirectly in respect of any of the liabilities of the Borrower;

(d) any change in the financial condition of the Borrower or any aforesaid person that the Lender, in its sole discretion, deems to be adverse;

(e) the suspension of business of the Borrower or any aforesaid person;

(f) the issuance of any warrant, process or order of attachment, garnishment or other lien and/or the filing of a lien as a result thereof against any of the property of the Borrower or any aforesaid person;

(g) the Borrower or any aforesaid person makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for the Borrower or any aforesaid person or for any property of any of them, or any proceeding is commenced by or against the Borrower or any aforesaid person under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt, receivership, liquidation or dissolution law or statute;

(h) it appears that any representation in any financial or other statement of the Borrower or any aforesaid person, delivered to the Lender by or on behalf of the Borrower or such person, is untrue or incomplete.

Upon the occurrence of an Event of Default, and at any time thereafter, the Lender may, without notice to the Borrower or any aforesaid person, make the liabilities of the Borrower to the Lender, whether or not then due, immediately due from and payable hereunder by the undersigned, and the Lender shall be entitled to enforce the obligations of the undersigned hereunder.

If claim is ever made upon the Lender for repayment or recovery of any amount or amounts received by the Lender in payment or on account of any of the liabilities of the Borrower and the Lender repays all or part of said amount of (a) any judgment, decree or order of any court or administrative body having jurisdiction over the Lender or any of its property, or (b) any settlement or compromise of any such claim effected by the Lender with any such claimant (including the Borrower), then and in such event the undersigned agrees that any such judgment, decree, order, settlement or compromise shall be binding upon the undersigned, notwithstanding any revocation hereof or the cancellation of any note or other instrument evidencing any liability of the Borrower, and the undersigned shall be and remain liable to the Lender hereunder for the amount so repaid or recovered to the same extent as if such amount had never originally been received by the Lender.

Any acknowledgment or new promise, whether by payment of principal or interest or otherwise and whether by the Borrower or others (including the undersigned), with respect to any of the liabilities of the Borrower shall, if the statute of limitations in favor of the undersigned against the Lender shall have commenced to run, toll the running of such statute of limitations and, if the period of such statute of limitations shall have expired, prevent the operation of such statute of limitations.

The undersigned shall pay to the Lender all costs and expenses, including filing fees and attorneys' fees, incurred by the Lender in connection with the custody, care, preservation or collection of any of the property of the undersigned or in seeking to enforce any of the liabilities or obligations of the undersigned hereunder.

The Lender shall have the right, at any time and from time to time, without notice, to sell, assign, transfer or otherwise dispose of all or any part of its rights under this guaranty. In such event, each and every immediate and successive purchaser, assignee, transferee or holder of all or any part of such rights shall have the right to enforce this guaranty, by legal action or otherwise, for its own benefit as fully as if such purchaser, assignee, transferee or holder were by name specifically given such right. The Lender shall have an unimpaired right to enforce this guaranty for its benefit to that portion of the rights hereunder that were not sold, assigned, transferred or otherwise disposed of.

No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this guaranty, shall be deemed to be made by the Lender unless the same shall be in writing, duly signed on behalf of the Lender, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Lender or the obligations of the undersigned to the Lender in any other respect at any other time.

The undersigned waives the right of trial by jury in the event of any litigation between the parties hereto in respect of any matter arising under this guaranty and agrees that, should the Lender bring any judicial proceedings in relation to any such matter, the undersigned will not interpose any counterclaim or setoff of any nature.

This guaranty and the rights and obligations of the Lender and of the undersigned hereunder shall be deemed to be a contract made under and shall be governed and construed in accordance with the laws of the State of Illinois, and this guaranty is binding upon the undersigned, his, their, or its executors, administrators, successors or assigns, and shall inure to the benefit of the Lender, its successors or assigns. In the event that the Lender brings any action or suit in any court of record of the State of Illinois or of the United States to enforce any or all liabilities of the undersigned hereunder, service of process may be made upon the undersigned by mailing a copy of the summons to the undersigned at the address below set forth.

In case one or more of the provisions contained in this guaranty shall be or shall be deemed to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

The rights, remedies, powers and privileges of the Lender hereunder are cumulative and not conclusive of any other rights, remedies, powers or privileges now or hereafter existing at law or in equity.

This guaranty may be signed in any number of counterparts with the same effect as if the signatures thereto and hereof were upon the same instrument.

     The undersigned, if more than one, shall be jointly and severally liable hereunder and the term "undersigned" wherever used herein shall mean the undersigned or any one or more of them.  Anyone signing this guaranty shall be bound hereby, whether or not anyone else signs this guaranty at any time.  The term "Lender" includes any agent of the Lender acting for it.  This Agreement is secured by a Pledge Agreement dated of even date herewith between the undersigned and the Lender.

Dated: __July 9, 2014__

_____      _____

**Laurentiu Ionescu-**
Individual Guarantor

Address: **2175 Chruchill Lane, Highland Park, IL 60035**

S.S # / Tax I.D.: ████████ ████████

STATE OF ILLINOIS)
          : ss.:
COUNTY OF COOK)

On the **9th** day of **July, 2014**, before me personally came <u>Laurentiu Ionescu</u>, President and Secretary, Individual Guarantor, to me known to be the individual(s) described in and which executed the foregoing instrument; and that he/she acknowledged that he/she executed the same.

_____
Notary Public

```
OFFICIAL SEAL
RITA RIVERA
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 08/28/2015
```

8

# EXHIBIT 21

# RIEMER | BRAUNSTEIN

**Phillip J. Block**
pblock@riemerlaw.com
(312) 780-1173  direct
(312) 780-1212  fax

July 6, 2018

**BY CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED AND**
**BY FIRST CLASS MAIL**
9414 7266 9904 2065 7527 52

Mr. Laurentiu Ionescu
2175 Churchill Lane
Highland Park, Illinois 60035

  Re:  **Loan Arrangement with Medallion Bank**

Dear Mr. Ionescu:

  Please be advised that this firm represents Medallion Bank (the "**Lender**") in connection with that certain loan arrangement by and between the Lender and Lincolnshire Service Corp. (the "**Borrower**"), which is evidenced by, among other documents, instruments, and agreements, the following:  (i) that certain Promissory Note dated as of July 9, 2014 made by the Borrower payable to the Lender in the original principal amount of $200,000.00 (as modified and in effect, the "**Note**"); (ii) that certain Guaranty dated as of July 9, 2014 and executed by you, Laurentiu Ionescu (the "**Guarantor**"), in favor of the Lender (the "**Guaranty**"); and (iii) that certain Forbearance and Loan Modification Agreement dated as of November 17, 2016 by and among the Lender, the Borrower and the Guarantor, among others (together with the Note, the Guaranty and all other documents, agreements, and instruments executed in connection therewith, collectively, the "**Loan Documents**").

  Please be advised that the Borrower is in default of its obligations to the Lender.  Accordingly, as a result of the foregoing, and in accordance with the terms and conditions of the Guaranty, the Lender hereby makes **DEMAND** upon you, the Guarantor, for the immediate payment in full of all amounts due under the Guaranty and other Loan Documents, including, without limitation, all outstanding principal, interest (accrued and hereafter accruing), charges, fees, and expenses (including, without limitation, all attorneys' fees and expenses) incurred by Lender in connection with the Loan Documents and the enforcement of the Lender's rights thereunder (collectively, the "**Obligations**").

  Please be further advised that, if the Obligations are not immediately repaid in full, the Lender may commence any or all appropriate action to collect the Obligations, without further notice to the Guarantor, except as may be required by law.  However, any failure or delay by the Lender in exercising any of its rights under the Guaranty or any other Loan Documents in this matter shall not constitute or be deemed to constitute (i) a cure or waiver of any default or event of default (whether now existing or

July 6, 2018
Page 2

hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Guaranty or the other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves the right from and after the date of this notice to accept one or more payments from the Guarantor or on the Guarantor's behalf and to apply such payments in reduction of the Obligations. The acceptance of any such payment will not constitute (i) a cure or waiver of any default or event of default (whether now existing or hereafter arising), (ii) an agreement to forbear by the Lender, or (iii) an amendment, modification, extension, or waiver of any of the terms of the Note, the Guaranty, or any other Loan Documents, or of any of the Lender's rights and remedies thereunder.

The Lender hereby expressly reserves all of its rights and remedies in this matter and confirms that the terms and conditions of the Guaranty and all other Loan Documents remain in full force and effect.

Your prompt attention to this matter is anticipated.

Very truly yours,

Phillip J. Block

PJB:sa

cc:     Mr. Tom Katsigiannis (by email)
        Mr. Anthony Hood (by email)
        Mr. Frank Natoli (by email)
        Douglas K. Clarke, Esq. (by email)

2325941.1

Riemer & Braunstein LLP

BOSTON        NEW YORK        CHICAGO        BURLINGTON