# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEDALLION BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18 C 5849 |
| | ) |
| LINCOLNSHIRE SERVICE I, CORP., | ) |
| LINCOLNSHIRE SERVICE II, CORP., | ) |
| LINCOLNSHIRE SERVICE CORP., | ) |
| IL 1, CORP., IL 2, CORP., and LAURENTIU | ) |
| IONESCU, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this diversity suit for breach of contract, Medallion Bank has sued several corporate entities and their sole proprietor, Laurentiu Ionescu, for defaulting on five loans guaranteed by Ionescu. Medallion Bank has moved for summary judgment.

## Background

Ionescu is the sole proprietor, president, and secretary of the five corporate defendants: Lincolnshire Service I, Lincolnshire Service II, Lincolnshire Service, IL 1, and IL 2. In five separation transactions in 2013 and 2014, Medallion Bank loaned money to the corporate defendants to finance taxi medallion purchases. The parties dispute the exact dates on which they executed the loans, but they otherwise agree on the facts. The approximate principal amounts and specific borrowers for the five loans were the following: (1) $1.4 million to Lincolnshire Service I; (2) $1.6 million to

Lincolnshire Service II, (3) $2.6 million to Lincolnshire Service and Lincolnshire Service II, (4) $1.2 million to IL 1 and IL 2, and (5) $200,000 to Lincolnshire Service. Ionescu executed promissory notes for each loan as the president and secretary of the corporate borrowers. The notes required the borrowers to make monthly payments and provided that Medallion Bank could assess late fees for overdue payments. Ionescu, in his individual capacity, signed a written guaranty for each loan.

The defendants made monthly payments on the loans for a time, but they all eventually defaulted when the loans matured in May 2018. And Ionescu, the guarantor, did not pay off the loans after the defendants defaulted. Medallion Bank has sued the corporate defendants for breach of the promissory notes and Ionescu for breach of the five guaranties. Medallion Bank has moved for summary judgment on all of its claims.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it affects the outcome of the suit. *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1054 (7th Cir. 2018). In reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Kvapil v. Chippewa County*, 752 F.3d 708, 712 (7th Cir. 2014). A court deciding a summary judgment motion may consider only materials that either "should be admissible in evidence or point to evidence that would be admissible at trial." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018).

Preliminarily, the defendants argue that the promissory notes and guaranties that

2

Medallion Bank submitted in support of its motion for summary judgment are inadmissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). This argument lacks merit because the contracts are not hearsay in the first place. Rather, they are "verbal acts" offered to prove the legal effect of an agreement between the parties. *See Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007);2 McCormick on Evidence § 249 (7th ed. 2016).

Even if the promissory notes and guaranties were hearsay, Medallion Bank has properly laid the foundation to admit them as business records under Federal Rule of Evidence 803(6). The rule requires that a custodian of the record or any "other qualified witness" testify that it was the "regular practice" of the business to make and keep the record; at the summary judgment stage, an affidavit from such a witness will suffice. *Thanongsinh v. Bd. of Educ., Dist. U-46*, 462 F.3d 762, 777 (7th Cir. 2006); Fed. R. Evid. 803(6). A "qualified witness" need not have personally created the record but "need only be familiar with the company's recordkeeping practices." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 686 (7th Cir. 2015). Medallion Bank submitted the promissory notes and guaranties through an affidavit from its Assistant Treasurer, Marie Russo. She testified that she is familiar with Medallion Bank's recordkeeping practices. Russo also stated that she had reviewed the promissory notes and guaranties pertaining to the defendants' loans and these were created in the ordinary course of Medallion Bank's business. This testimony sufficiently lays the foundation for admitting the agreements into evidence. *See id.*

A close read of the defendants' argument suggests that their real objection may be that the promissory notes and guaranties were not properly authenticated under

3

Federal Rule of Evidence 901(a), which requires showing that "the item is what the proponent claims it is." Authentication can be made through a sworn affidavit of a witness with knowledge. *See* Fed. R. Evid. 901(b)(1); *Conway v. Done Rite Recovery Servs., Inc.*, No. 14 C 5182, 2015 WL 1989665, at *3 (N.D. Ill. April 30, 2015). Russo sufficiently authenticated the promissory notes and guaranties by testifying that she is familiar with Medallion Bank's recordkeeping practices, she routinely reviews its records, and the agreements were created in the regular course of Medallion Bank's business. *See Conway*, 2015 WL 1989665, at *3.

The defendants question the authenticity of the promissory notes and guaranties based on Ionescu's testimony that he did not recall specific details about their execution, including the exact dates he signed them, the presence of notaries, or whether he received copies of the documents. But none of these undermine the authenticity of the agreements, and the defendants do not cite any authority that suggests otherwise. In fact, Ionescu's testimony supports, rather than refutes, the authenticity of the promissory notes and guaranties: he admitted that it was his signature on each and that he had no reason to doubt the authenticity of the signatures. In sum, the Court may consider the promissory notes and guaranties because they would be admissible at trial.

The Court applies the law of the forum state, Illinois, as neither side contends that another state's law should apply. *Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611 (7th Cir. 2012). A breach of contract claim under Illinois law has four elements: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) injury to the plaintiff. *Hess v. Bresney*, 784 F.3d 1154,

4

1158–59 (7th Cir. 2015) (stating Illinois law).

There is no genuine factual dispute regarding any of the elements of Medallion Bank's breach of contract claims. The defendants do not contest the existence of valid and enforceable contracts with Medallion Bank. Ionescu admitted that he executed a promissory note for each loan, that it was his signature on the notes and guaranties, and that he had no reason to doubt the authenticity of those agreements. In light of this testimony, Ionescu's inability recall the specific details about the execution of the agreements, such as the exact dates on which he executed them, does not undermine their enforceability. The defendants do not cite any authority that would suggest otherwise.

The remaining three elements of the breach of contract claim are likewise not genuinely disputed. Ionescu testified that Medallion Bank performed its obligations by transferring funds to the defendants in the full amounts set forth in the promissory notes. He also admits that the defendants breached their obligations under the notes and injured Medallion Bank when they failed to pay as required. And Ionescu testified that he failed to pay off the loans on which the corporate defendants defaulted, thereby breaching his obligations under the guaranties.

The defendants argue that summary judgment is not appropriate, however, because they contest Medallion Bank's assessment of late charges against them. But the defendants cannot rely on this factual dispute to avoid summary judgment on liability, because it would not prevent entry of a judgment in favor of Medallion Bank. *See Moore*, 908 F.3d at 1054. The question of Medallion Bank's injury is not genuinely disputed.

The Court agrees with the defendants, however, that the evidence currently in the record is not sufficient to establish the exact amount of Medallion Bank's damages. Through Russo's affidavit, Medallion Bank submitted a "payoff statement" for each loan, listing the outstanding principal, interest, and total late charges. But nothing in the affidavit or the payoff statement explains what late charges were incorporated into the cumulative late-charge total. And although the promissory notes provided that Medallion Bank could assess late charges at a rate of five cents for each overdue dollar, it has offered nothing to explain the basis or calculation of any specific late charge.

The Court concludes that summary judgment is appropriate on the question of the defendants' liability on each of Medallion Bank's claims but withholds entry of final judgment pending the submission of further evidence supporting the full amounts claimed to be due.

**Conclusion**

For the foregoing reasons, the Court grants in part Medallion Bank's motion for summary judgment [dkt. no. 43] and finds in favor of Medallion Bank on the question of liability on each of its claims. Because there is a good chance that the amounts due can be established beyond dispute without the need for a trial, the Court directs Medallion Bank to file, by no later than October 29, 2019, a supplement to its summary judgment motion providing proper support for each component of the amounts claimed to be due. The case is set for a status hearing on October 31, 2019 at 9:30 a.m.

```
_____
           MATTHEW F. KENNELLY
           United States District Judge
```

Date: October 17, 2019